**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-4046

_____

United States of America,      *
                                  *

          Appellee,      *

                                  *

      v.                      *   Appeal from the United States

                                  *   District Court for the Northern

John Raymond Koontz,      *   District of Iowa.

                                  *

          Appellant.      *

_____

Submitted:  March 10, 1998

Filed:  May 1, 1998

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After stopping John Raymond Koontz for a traffic violation, local police in
Buchanan County, Iowa, arrested him for driving while his license was suspended.
Subsequent searches of his car revealed drugs and a loaded and cocked gun; state drug
and gun offenses were then added to the charges against him.

_____

[1]The result in this case comports with the views that Judge Floyd R. Gibson
expressed in conference.  Judge Gibson's temporary disability due to illness has
prevented his further participation in the case.

Evidently unable to post bail, Mr. Koontz was sent to the county jail pending a preliminary hearing provided for by state law. After four days, he asked to talk with a federal drug agent and did so, once on that same day and once about a week later. At the first interview, according to the agent, Mr. Koontz acknowledged distributing about ten pounds of methamphetamine in the previous year. At the second interview, according to the agent, Mr. Koontz reduced to about four pounds the amount that he acknowledged distributing in the previous year.

In between the first and second interviews, the federal government obtained an indictment against Mr. Koontz. After a three-day trial, a jury convicted him of one count of being a felon in possession of a gun, see 18 U.S.C. § 922(g)(1), one count of possessing a substance with a detectable amount of methamphetamine with intent to distribute it, see 21 U.S.C. § 841(a)(1), § 841(b)(1)(C), and one count of carrying a gun during and in relation to a federal drug offense, see 18 U.S.C. § 924(c)(1). The trial court sentenced Mr. Koontz to 120 months on the first count, 240 months on the second count (those sentences to run concurrently), and 60 months on the third count (to run consecutively to the sentences on the first two counts).

Mr. Koontz appeals, challenging the denial of his pretrial motion to suppress the two statements that he made to the federal drug agent, the admission during trial of a county jail booking report pertaining to another person, the use of a jury instruction that permitted a guilty verdict on the gun "carrying" count even though the gun was found not on his person but in his car, and the application of the federal sentencing guidelines related to methamphetamine instead of those related to amphetamine. We affirm the judgment of the trial court.

I.

Mr. Koontz moved to suppress the two statements that he made to the federal drug agent, asserting that the agent did not give him the warnings required by Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), before eliciting the statements. The

trial court referred Mr. Koontz's motion to a magistrate judge, who held a hearing on it.

The magistrate judge recommended that the trial court deny the motion, based on three conclusions. First, the magistrate judge concluded that because Mr. Koontz himself requested the interview with the federal drug agent, Mr. Koontz was not, as a matter of law, "in custody," Miranda, 384 U.S. at 445, when he made the statements in question. Second, the magistrate judge concluded that Mr. Koontz's statements were not the product of police "interrogation," id. Third, the magistrate judge concluded that Mr. Koontz gave the statements "voluntarily," id. at 478; see also 18 U.S.C. § 3501(a). The trial court adopted the conclusions of the magistrate judge and denied the motion to suppress.

On appeal, Mr. Koontz challenges only the first two of the conclusions rehearsed above. Mr. Koontz argues that a person who is under arrest on certain charges is always "in custody" for Miranda purposes when that person subsequently talks with a law enforcement officer about topics directly connected to those charges. We agree and cannot subscribe to the trial court's conclusion that Mr. Koontz was not "in custody" for Miranda purposes when he talked with the federal drug agent.

The warnings described in Miranda, 384 U.S. at 444-45, are required when a defendant has been subjected to "custodial interrogation." Id. at 444. The warnings are required "to dispel the compulsion inherent in custodial surroundings." Id. at 458; see also id. at 465, 467, 469, 474, 476. "Custodial" for Miranda purposes means that a defendant "has been taken into custody or otherwise deprived of his freedom of action in any significant way" (emphasis supplied). Id. at 444. See also Berkemer v. McCarty, 468 U.S. 420, 434 (1984); Miranda, 384 U.S. at 445, 471, 477-78; United States v. McKinney, 88 F.3d 551, 554 (8th Cir. 1996); and United States v. Caldwell, 954 F.2d 496, 499 (8th Cir. 1992), cert. denied, 506 U.S. 819 (1992).

We turn, then, to the issue of whether Mr. Koontz's interviews with the federal drug agent amounted to "interrogation."  Mr. Koontz contends that he merely "wanted to discuss making [drug] buys and cooperating with the government" and that he did not anticipate, nor for those purposes was it necessary for him to be subjected to, "incriminating questions" "about all of his past drug involvement," including the "quantities of drugs he was allegedly involved with" with respect to the charges pending against him.  He asserts, therefore, that his interviews with the agent amounted to "interrogation" for <u>Miranda</u> purposes.  We disagree.

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966), the Supreme Court stated that "interrogation" means "questioning initiated by law enforcement officers."  The Court later expanded that definition to include "either express questioning or ... any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the [defendant]."  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980).

In a case in which we specifically considered the application of <u>Innis</u>, we held that, for <u>Miranda</u> purposes, statements made in response to a law enforcement officer's "attempt to seek clarification" of a defendant's remarks, during an interview requested by the defendant, are not the "products of interrogation."  <u>Butzin v. Wood</u>, 886 F.2d 1016, 1018 (8th Cir. 1989), <u>cert. denied</u>, 496 U.S. 909 (1990); <u>see also United States v. Hawkins</u>, 102 F.3d 973, 975 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1456 (1997), and <u>Stumes v. Solem</u>, 752 F.2d 317, 322-23 (8th Cir. 1985), <u>cert. denied</u>, 471 U.S. 1067 (1985).

Mr. Koontz himself acknowledged at the hearing on his motion to suppress that he sent a message asking to talk with a federal drug agent; that the interviews in question occurred subsequent to, and presumably because of, that message; and that "any time you meet with someone, ... they're going to ask questions.  That was the point."  In addition, Mr. Koontz testified at the hearing that he "volunteer[ed]" to the

agent that "I could probably get him something" and that the agent's subsequent questions were in response to that remark. It is clear to us from the agent's testimony at the hearing, moreover, that his questions about quantity were also intended to discover sufficient information to convince the federal prosecutor that "it [was] worth our while" to accept Mr. Koontz's offer to cooperate with the government by making drug purchases from other methamphetamine dealers. In the circumstances of this case, we hold that Mr. Koontz was not subjected to "interrogation" by the agent and, accordingly, that the trial court properly denied the motion to suppress the statements that Mr. Koontz gave to the agent.

II.

At trial, Mr. Koontz's son testified that the gun found in his father's car belonged to and was put there by one of the son's friends just a few days or so before Mr. Koontz's arrest. Mr. Koontz himself testified that he did not know that the gun was in the car. In rebuttal, the government offered a fax of a computer-generated booking report from the Polk County, Iowa, jail showing that an "Asian" person with the same name as the son's friend was in that jail at least six weeks before Mr. Koontz's arrest, was not released until more than a week after Mr. Koontz's arrest, and was serving time during that period on a probation revocation. The trial court admitted the booking report into evidence as a record from a public office. See Fed. R. Evid. 803(8)(A). Mr. Koontz contends first that the government failed to lay the proper foundation for the admission of the booking report.

Specifically, Mr. Koontz asserts that the federal drug agent (through whom the government offered the booking report) had no personal knowledge of how it was prepared, and thus that the booking report was not admissible under Fed. R. Evid. 602. We believe, however, that Fed. R. Evid. 602 has no application to this situation. The agent did not testify that he had personal knowledge of the matters asserted in the report; it was the report itself that was the evidence of relevant matters. The agent's testimony was needed only to authenticate the report.

As to the admissibility of the report itself, Fed. R. Evid. 803(8)(A) allows the admission of "[r]ecords, reports, ... or data compilations ... of public offices or agencies, setting forth ... the activities of the office or agency, ... unless the sources of information or other circumstances indicate lack of trustworthiness."  Mr. Koontz contends that because the booking report was computer-generated, it was more likely to be inaccurate than, presumably, a manually prepared document.

From the trial transcript, it is clear that Mr. Koontz was advised of the existence of the booking report before it was offered as evidence.  Neither during the voir dire (outside the presence of the jury) or the cross-examination of the federal drug agent, however, did Mr. Koontz explore whether more errors typically occur with computer-generated booking reports than with manually prepared documents.  Nor does Mr. Koontz direct us, in his briefs, to any case law on this issue.  In the absence of either a more extensive challenge at trial or some citation of case authority for his argument, we see no reason to reject the booking report simply because it was computer-generated.  See, e.g., United States v. Orozco, 590 F.2d 789, 794 (9th Cir. 1979), cert. denied, 439 U.S. 1049 (1978), 442 U.S. 920 (1979).

On voir dire of the federal drug agent, the government pointed out that the subject of the booking report was "Asian," was 22 years old, had a previous address on a certain street, and was booked to serve time on a probation revocation.  Mr. Koontz argues that more than one person could have the name of the son's friend and therefore that it is risky to assume that the booking report that was offered is actually a record for the son's friend rather than for someone else.  The trial court also expressed some concern in this regard, but concluded that the son's friend and the subject of the booking report were "the same person," and admitted the report.

We believe that the trial court erred in taking the responsibility for determining this matter of fact.  The question of whether the subject of the report and the son's friend were the same person was for the jury.  The trial court's duty was simply to

determine whether there was evidence in the record sufficient to support a jury finding that the report concerned the son's friend. See Fed. R. Evid. 104(b).

The error, however, was harmless, because there was indeed such evidence in the record. Mr. Koontz's son testified that about two months before his father's arrest, he and his father lived on a street with the same name as the subject's previous address in the booking report. Mr. Koontz himself testified that his son's friend was "not completely white, ... with sort of slanty eyes," was "18 or something like that" when Mr. Koontz met him, and was being sought by the police "for probation violation or something like that" around the time of Mr. Koontz's arrest. Finally, the federal drug agent testified, without objection, that from Iowa driver's license records he was able to determine that only one person in the state with the name of the son's friend was between 18 and 25 years old, had a driver's license from the city where Mr. Koontz and his son lived, and "matches the description" (the agent gave no further details). In light of all of the consistencies between the information about the son's friend from testimony and the information from the booking report, and the absence of any major discrepancies, we are satisfied that the booking report was admissible under Fed. R. Evid. 104(b).

### III.

Mr. Koontz maintains that because it is undisputed that the local police found the gun in his car rather than on his person, the jury instruction about the requirements for "carrying" a gun was improper (this actually seems to us to be more of a sufficiency-of-evidence argument than a jury-instruction argument). The instruction in question allowed the jury to convict Mr. Koontz on the "carrying" charge even if the jury found only that he "transport[ed]" gun in his car, as long as the gun was there to "facilitate" the drug crime.

Mr. Koontz acknowledges that the law in this circuit permits a conviction on a "carrying" charge under 18 U.S.C. § 924(c)(1) on the basis of such evidence. See, e.g.,

United States v. Nelson, 109 F.3d 1323, 1325-26 (8th Cir. 1997), that case assuming, without deciding, however, that gun was also "readily available" to defendant. See also, both cases holding that gun in car need not be "immediately accessible" to defendant, even if gun not on defendant's person, United States v. Cleveland, 106 F.3d 1056, 1066-69 (1st Cir. 1997), cert. granted, 118 S. Ct. 621 (1997), and United States v. Molina, 102 F.3d 928, 932 (7th Cir. 1996). We are, of course, not free to overrule these cases, despite Mr. Koontz's insistence that they were erroneously decided.

IV.

The trial court used a calculation of four pounds (1.8 kilograms) of methamphetamine in determining Mr. Koontz's sentence under the applicable federal guidelines. See U.S.S.G. § 2D1.1(a)(3) (November, 1995, edition with May, 1997, supplement). On appeal, Mr. Koontz argues, first, that because some of the drugs found in his car were amphetamine, the trial court should have used amphetamine, see U.S.S.G. § 2D1.1(c)(7) and application note 10, schedule I/II stimulants, rather than methamphetamine, see U.S.S.G. § 2D1.1(c)(4), as the basis for calculating the sentence; second, that the four-pound figure is unrealistically high; and, third, that because the four-pound figure is based primarily on uncharged conduct rather than the quantity of drugs actually found in Mr. Koontz's car, "clear and convincing evidence" should be the standard of proof with respect to the amount of drugs used for sentencing purposes.

The basis for the trial court's use of methamphetamine rather than amphetamine for sentencing purposes was the federal drug agent's testimony that Mr. Koontz acknowledged selling four pounds of methamphetamine in the year prior to his arrest. We also note that a county detective who testified at the trial described Mr. Koontz's request to talk with a federal drug agent by saying that Mr. Koontz "told me that he wanted to talk about drug cases involving methamphetamine" (emphasis supplied).

While it is true that Mr. Koontz himself used the word "dope" rather than "methamphetamine" in his trial testimony about his statements to the federal drug agent, he answered "[y]eah" when asked on cross-examination whether he told the agent that he "could help out with sources of <u>methamphetamine</u>" (emphasis supplied). When asked on further cross-examination whether he told the agent that he was "selling an ounce of <u>methamphetamine</u>" (emphasis supplied) per week during the previous summer, Mr. Koontz answered that he "could have" said that. Mr. Koontz's lawyer, moreover, used the word "methamphetamine" at least three times when cross-examining the federal drug agent about Mr. Koontz's statements and never used the word "amphetamine" except when referring to the drugs found in Mr. Koontz's car and when asking Mr. Koontz if he had ever sold any drugs at all.

Under these circumstances, we do not think that the trial court erred in using four pounds of methamphetamine as the basis for calculating Mr. Koontz's sentence. We also reject Mr. Koontz's novel contention that the appropriate standard of proof for sentencing purposes in this case is anything but "preponderance of the evidence." <u>See</u>, <u>e.g.</u>, <u>United States v. Wise</u>, 976 F.2d 393, 400-01 (8th Cir. 1992) (<u>en</u> <u>banc</u>), <u>cert. denied</u>, 507 U.S. 989 (1993).

V.

For the reasons stated, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.