# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1613

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Benjamin Godfrey Chipps, Sr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 13, 2004
Filed: June 6, 2005 (Corrected: 07/15/05)

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Benjamin Chipps, Sr., was convicted by a jury on one count of assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6), and two counts of simple assault, 18 U.S.C. § 113(a)(5), and he was sentenced to 97 months in prison. Mr. Chipps appeals from his convictions and sentence. He challenges his convictions on fourth amendment, fifth amendment, jurisdictional, and evidentiary grounds. As for his sentence, he argues that it violates the sixth amendment because the district court[1] increased it on the basis of facts that were not found by the jury beyond a reasonable

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

doubt under the mandatory guideline regime. *See United States v. Booker,* 125 S. Ct. 738, 755-56 (2005). For the reasons stated below, we direct the district court to vacate one of Mr. Chipps's simple assault convictions, and we affirm his other two convictions and his sentence.

## I.

Mr. Chipps contends that federal authorities improperly searched his property and seized evidence without a warrant in violation of the fourth amendment. A tribal police department dispatcher informed Bureau of Indian Affairs Special Agent James Chief that an assault had occurred at Mr. Chipps's residence on the Pine Ridge Reservation in rural South Dakota. Agent Chief drove to Mr. Chipps's residence. While standing near the front door of the residence, Agent Chief saw a drop of blood on the ground. When he approached it, he discovered a trail of blood, which he followed for twenty or thirty feet to a blood-stained sweatshirt. Agent Chief took some pictures of the trail of blood and the sweatshirt and seized the sweatshirt as evidence. Testimony adduced at trial indicated that the sweatshirt belonged to the assault victim, Len Pourier.

The fourth amendment provides, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As a rule, searches and seizures are unreasonable unless accompanied by a warrant. *See, e.g., Illinois v. McArthur*, 531 U.S. 326, 330 (2001). There are exceptions to this rule, however. *Id.* at 330-31. For one, a warrant is not required for a search under the fourth amendment when exigent circumstances exist. *United States v. Collins,* 321 F.3d 691, 694-95 (8th Cir. 2003), *cert. denied*, 540 U.S. 1076 (2003). Exigent circumstances exist if a reasonable law enforcement officer could believe that a person "is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978); *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent

an exigency or emergency." *Mincey*, 437 U.S. at 392 (internal quotations omitted). Under the exigent-circumstances exception, then, police may enter property without a warrant if they could reasonably believe that a person is in need of immediate assistance. *See, e.g., Collins v. Bellinghausen*, 153 F.3d 591, 596 (8th Cir. 1998).

The plain-view doctrine is another exception to the warrant requirement. Pursuant to the plain-view doctrine, a law enforcement officer may seize an object without a warrant if the officer did not violate the fourth amendment in reaching the place from which the object could be plainly viewed, "the object's incriminating character is immediately apparent, and the officer has a lawful right of access to the object itself." *Collins*, 321 F.3d at 694 (internal quotations omitted).

Mr. Chipps maintains that the police violated the fourth amendment when they followed the trail of blood and seized the sweatshirt. He admits that their presence at his front door was legally unobjectionable and that the first drop of blood was plainly visible from the area immediately in front of the door to his house. Agent Chief's fourth amendment violations began, Mr. Chipps asserts, when he followed the trail of blood. Mr. Chipps insists that the trail was contained within his house's curtilage, which deserves the same constitutional protection as the house itself. Thus, he contends, Agent Chief needed to obtain a warrant before he could follow the blood and seize the sweatshirt.

Agent Chief's search and seizure did not violate the fourth amendment. Even if we assume that the trail of blood was within the houses's curtilage, to which the warrant rule applies, *United States v. Gerard*, 362 F.3d 484, 487 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 311 (2004), the exigent-circumstances exception justified Agent Chief's decision to follow the trail: Agent Chief could have reasonably believed that the trail of blood indicated that someone's life was in immediate danger, especially as he had been told that a person had been assaulted at Mr. Chipps's residence.

*Cf. Leveringston*, 397 F.3d at 1117-18; *United States v. Janis*, 387 F.3d 682, 687-88 (8th Cir. 2004); *Collins*, 321 F.3d at 694-95.

The plain-view doctrine, moreover, justified Agent Chief's seizure of the sweatshirt. Agent Chief, as explained above, legally arrived at the place from which he could see the sweatshirt, the incriminating nature of a bloody sweatshirt at the site of a potential assault was obvious, and he had a legal right to access the shirt – it was right in front of him on the ground, *see generally Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004). *See Mincey*, 437 U.S. at 393.

II.

Mr. Chipps also argues that a search warrant obtained by law enforcement was not supported by probable cause and, in the alternative, that it was supported by probable cause only because the district court considered a false statement included in the warrant affidavit. He asks us to exclude the evidence seized pursuant to the warrant if we find that there was no probable cause, or, in the alternative, to order an evidentiary hearing in accord with *Franks v. Delaware*, 438 U.S. 154 (1978), if we find that probable cause existed only if we consider the false statement.

Several days after the assault on Mr. Pourier, law enforcement officials obtained a warrant authorizing them to search Mr. Chipps's house. The warrant was based on a Federal Bureau of Investigation agent's affidavit. The affidavit states, in part, "according to [Waylon] Red Elk, Godfrey Chipps, Sr. hit Pourier in the face with his fists." It also includes other pieces of information related to the assault on Mr. Pourier. As a result of this warrant, law enforcement officials obtained evidence inculpating Mr. Chipps in the assault.

A search warrant is proper (*i.e.*, is supported by probable cause) if "the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence." *United States v. Humphrey*, 140 F.3d 762, 764 (8th Cir.

1998). A defendant is entitled to an evidentiary hearing pursuant to *Franks*, 438 U.S. at 155-56, if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." (At this hearing, a court decides whether the probable-cause determination was based on information that was intentionally false or given in reckless disregard for its truth. *See id.* at 156; *see also United States v. Leisure*, 844 F.2d 1347, 1357 (8th Cir. 1988), *cert. denied*, 488 U.S. 932 & 960 (1988).) Even if an affidavit for a search warrant contains improper material, the warrant is valid so long as the remaining content of the affidavit suffices to provide probable cause. *See United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001).

Mr. Chipps points to five difficulties with the affidavit aside from the inclusion of the allegedly false statement. We will not rehearse them; suffice it to say that Mr. Chipps contends that the affiant relied on unreliable sources and came to unjustifiable conclusions based on the available evidence. As for the false statement, Mr. Chipps asserts that the declaration in the affidavit that Mr. Red Elk said that Mr. Chipps hit Mr. Pourier with "his fists" is false. As proof, he points to the transcript of the FBI's interview of Mr. Red Elk, which was attached to the affidavit. During this interview, an FBI agent asked Mr. Red Elk, "Do you, he was just beatin' him with his hands?" Mr. Red Elk responded, "Yeah, just his hands." Mr. Chipps focuses on the fact that Mr. Red Elk did not use the word "fists" and argues that the affidavit contains a false statement since it avers that Mr. Red Elk said that Mr. Chipps used his fists.

We conclude that the warrant was valid. The following information contained in the warrant affidavit, and unchallenged by Mr. Chipps, established probable cause. First, Julia Chipps found Mr. Pourier lying on the ground near Mr. Chipps's house, unconscious, shirtless, and with blood on his face. Second, the same day that Ms. Chipps found Mr. Pourier, Agent Chief discovered the trail of blood and the

blood-stained sweatshirt on Mr. Chipps's property. Third, an FBI agent who examined Mr. Pourier at the hospital saw and photographed what appeared to be boot-mark impressions on Mr. Pourier's body. Since there was probable cause to support the warrant without the supposedly false statement, we need not decide whether it is false. *See Franks*, 438 U.S. at 155-56. That said, we doubt that the statement in the warrant affidavit is anything more than a reasonable rephrasing of Mr. Red Elk's statement to the FBI.

III.

Mr. Chipps next argues that the district court should have suppressed two sets of statements that he made to law enforcement officers because the officers had not apprised him of his *Miranda* rights before either set of statements. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Mr. Chipps made the first group of statements while law enforcement officials were executing a search warrant at his house. His argument with regard to these statements is untenable. Our review of the record indicates that no evidence of these statements was ever introduced at trial. Thus, the district court's decision not to suppress the statements did not harm Mr. Chipps. We, therefore, turn to the second set of statements.

The district court did not explicitly find the following facts. We think, though, that the district court's holding that Mr. Chipps's statements were voluntary and spontaneous includes an implicit finding of the following facts, particularly the fact that there was about one minute of silence between the first part of the conversation and the second. *Cf. Gay & Lesbian Student Ass'n v. Gohn*, 850 F.2d 361, 368 (8th Cir. 1988). Also, Mr. Chipps does not challenge these facts.

FBI agent Michael Elton fingerprinted Mr. Chipps the day after Mr. Chipps's arrest. Agent Elton told Mr. Chipps that he had been one of the law enforcement officers who had tried to stop Mr. Chipps on Interstate 90 on the previous day. Mr. Chipps responded that he would have pulled over (and not led the officers on a

high-speed pursuit) had they identified themselves – the first group of officers who tried to stop Mr. Chipps on the day of the arrest were driving unmarked cars. After about a minute of silence, Mr. Chipps said to Agent Elton that he knew that FBI agent Charles Cresalia had been looking for him. Agent Elton affirmed that Agent Cresalia had indeed been looking for Mr. Chipps for a long time. Mr. Chipps then mentioned that a tribal police officer had told him about a federal warrant and that he had told the police officer that he had commitments and ceremonies to perform before surrendering to law enforcement. When Agent Elton asked Mr. Chipps when he found out about the warrant, he replied that he had found out about it three years earlier. The government put evidence of this exchange before the jury.

*Miranda*, 384 U.S. at 444, prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his fifth amendment privilege against self-incrimination and right to an attorney. The government does not dispute that Mr. Chipps was in custody or that he had not received *Miranda* warnings. The only question is whether Agent Elton interrogated Mr. Chipps. Interrogation is not limited to express questioning; it includes words or conduct that the officer should know are "reasonably likely to illicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted). *Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer. *United States v. Hawkins*, 102 F.3d 973, 975 (8th Cir. 1996), *cert. denied*, 520 U.S. 1179 (1997). An officer's request for clarification of a spontaneous statement generally does not constitute interrogation. *See Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989), *cert. denied*, 496 U.S. 909 (1990); *see also United States v. Koontz,* 143 F.3d 408, 411 (1998).

Mr. Chipps asserts that he was interrogated by Agent Elton. He insists that Agent Elton should have known that if he mentioned the pursuit then Mr. Chipps would discuss his involvement in it and thereby incriminate himself.

-7-

Mr. Chipps's statements to Agent Elton were properly admitted under *Miranda*. The agent's mention of his own involvement in the pursuit did not constitute interrogation because it was not likely to elicit incriminating evidence; it was a statement of fact not a plea to the conscience, and it was not accompanied by any threats or other coercive pressure. *Cf. United States v. Briggs*, 273 F.3d 737, 740-41 (7th Cir. 2001). Mr. Chipps's response to this statement, therefore, was admissible. Mr. Chipps's acknowledgment that he knew that Agent Cresalia had been looking for him was admissible as a spontaneous statement made during a conversation not initiated by the officer: It followed a one-minute lapse during which there was no talking, and it was not made in response to a question posed by Agent Elton. *See Andersen v. Thieret*, 903 F.2d 526, 531-32 (7th Cir. 1990); *Hawkins*, 102 F.3d at 975. Mr. Chipps's comment that he had been told about the warrant was also admissible as a spontaneous statement. Finally, his response to Agent Elton's question about how long he had known about the warrant was properly admitted. A request for clarification of a spontaneous statement generally does not constitute interrogation. *See Butzin*, 886 F.2d at 1018; *see also Koontz,* 143 F.3d at 411. A question would constitute interrogation if it attempted to "enhance [Mr. Chipps's] guilt," *Butzin*, 886 F.2d at 1018, but we do not think that Agent Elton's inquiry into how long Mr. Chipps had known about the warrant was such an attempt. Mr. Chipps's statement indicated that he had known about the warrant for some time, and Agent Elton simply asked about the exact length of time.

## IV.

Mr. Chipps contends that the search warrant for his house was invalid because the judge did not have authority to issue it. South Dakota Circuit Judge John E. Fitzgerald issued the federal warrant pursuant to Federal Rule of Criminal Procedure 41(b)(1). That rule provides that, at the request of a federal law enforcement officer or government attorney, "a magistrate judge with authority in the district – or if none is reasonably available, a judge of a state court of record in the district – has authority to issue a warrant to search for and seize a person or property located within the

district." Fed. R. Crim. P. 41(b)(1). Judge Fitzgerald, now deceased, was a judge of the Seventh Judicial Circuit of South Dakota; Mr. Chipps's residence was in the Sixth Judicial Circuit of South Dakota.

Judge Fitzgerald was not authorized to issue the warrant, Mr. Chipps insists, because Mr. Chipps's house was not within the judge's state judicial district. As Mr. Chipps reads it, the plain text of Rule 41(b)(1) limited Judge Fitzgerald to issuing warrants for searches and seizures in the Seventh Judicial Circuit of South Dakota. This textual argument makes sense, he continues, because "a federal rule cannot bestow on a state court judge more authority than the judge has under state law."

The warrant was valid. We generally presume that when a word is used twice in the same act it has the same meaning both times. *See In re Complaint of Mike's, Inc.*, 317 F.3d 894, 897 (8th Cir. 2003). Rule 41(b) first uses the term "district" to refer to a federal magistrate judge's district – a federal district. *Cf.* Fed. R. Crim. P. 1(b)(5). Thus, we presume that when the rule mentions a "judge of a state court of record in the district," the word "district" refers to the federal district in which the state court judge sits. We see no reason, moreover, to conclude that the presumptive rule does not apply in this case. Rule 41(b)(1) installs the state judge as a proxy for the federal magistrate, and for the state judge to be an effective proxy, he or she should have the same territorial jurisdiction (*i.e.*, the same ability to issue a warrant) as a federal magistrate. *See generally* Fed. R. Crim. P. 2; *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952). Interpreting "district" to mean federal district throughout the rule ensures that state judges and federal magistrates have the same territorial reach under Rule 41(b)(1). We are not alone in interpreting "district" in this way. The Fifth Circuit faced the same question in relation to an earlier, though quite similar, iteration of Rule 41, and, it, too, concluded that the word "district" meant federal district. *United States v. Beaumont*, 972 F.2d 553, 557-58 (5th Cir. 1992) (per curiam).

There is no merit to Mr. Chipps's claim that a federal rule cannot give a state judge more authority than he has under state law. We can locate no legal bar, either constitutional or statutory, to authorizing state courts to issue federal warrants for searches and seizures that are to take place outside of the state court's state jurisdiction.

Mr. Chipps argues in passing that the warrant is invalid for another reason, namely, that the government did not show that a federal magistrate judge was not "reasonably available." *See* Fed. R. Crim. P. 41(b)(1). He does not develop this argument beyond asserting that "[t]here was no showing ... that a federal magistrate or judge was not reasonably available." An appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies." Fed. R. App. P. 28(a)(9)(A). Mr. Chipps's assertion that there was no showing of unavailability does not suffice to satisfy this standard. *See United States v. Brooks*, 175 F.3d 605, 606-07 (8th Cir. 1999), *cert. denied*, 528 U.S. 958 (1999) & 528 U.S. 1119 (2000). We therefore decline to consider the merits of this argument. *See United States v. Gonzales*, 90 F.3d 1363, 1369-70 (8th Cir. 1996).

V.

Mr. Chipps argues that Counts II and III of the indictment are multiplicitous. He contends that they relate to a single act such that punishment for both is double punishment for one crime in violation of the double-jeopardy clause. Mr. Chipps also maintains that, apart from opening the door to duplicative punishment, the multiplicitous indictment had a psychological effect on the jury by "suggesting that the alleged criminal activity [was] of greater scope and gravity than it actually [was]." This effect, he asserts, tainted the jury's deliberations as to all counts, obligating us to reverse his convictions and remand the case for a new trial.

Counts II and III of the indictment both charged Mr. Chipps with assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3); according to Count II, the weapon was shod feet, and according to Count III, the weapon was a baseball bat. The jury acquitted Mr. Chipps of both counts of assault with a deadly weapon, instead convicting him of two counts of simple assault, § 113(a)(5), a lesser included offense of assault with a dangerous weapon, *United States v. Estrada-Fernandez*, 150 F.3d 491, 495 (5th Cir. 1998) (per curiam). The district court imposed 6-month sentences for both misdemeanor-simple-assault convictions to be served concurrently with a 97-month sentence for his conviction for assault resulting in serious bodily injury. Each conviction for simple assault carried with it the $10 special assessment that accompanies every class-B misdemeanor conviction in federal court. *See* 18 U.S.C. § 3013.

Interpreting the facts in the light most favorable to the verdict, *see United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999), we understand the simple assault conviction that derived from the assault-with-shod-feet charge to relate to assaultive conduct that occurred inside Mr. Chipps's house. We similarly understand the second simple assault conviction to relate to assaultive conduct that occurred after Mr. Pourier stumbled out of the front door of the house following the initial onslaught by Mr. Chipps. As far as we can tell, no more than a few seconds elapsed between these two instances of assaultive conduct.

An indictment is multiplicitous if it charges the same crime in two counts. *See United States v. Worthton*, 315 F.3d 980, 983 (8th Cir. 2003). The main difficulty with such an indictment is that the jury can convict the defendant on both counts, subjecting the defendant to two punishments for the same crime in violation of the double-jeopardy clause of the fifth amendment. *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 364 & 430 (2004). When the same statutory violation is charged twice, the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution. *See Bell v.*

-11-

*United States*, 349 U.S. 81, 81, 83-84 (1955); *United States v. Weathers*, 186 F.3d 948, 952 (D.C. Cir. 1999), *cert. denied*, 529 U.S. 1005 (2000). The unit of prosecution is the aspect of criminal activity that Congress intended to punish.

To determine whether this indictment is multiplicitous, we must decide whether Congress intended to punish assault as a course of conduct, such that the first bit of assaultive conduct (which took place in the house) is of a piece with the second bit (which took place outside), or whether Congress sought to punish separately individual acts within an assaultive episode. We look to the statutory language, legislative history, and statutory scheme to ascertain what Congress intended the unit of prosecution to be. *United States v. Kinsley*, 518 F.2d 665, 668 (8th Cir. 1975). When Congress fails to establish the unit of prosecution "clearly and without ambiguity," we resolve doubt as to congressional intent in favor of lenity for the defendant. *Bell*, 349 U.S. at 83-84.

With respect to the asserted double-jeopardy violation, we focus our analysis on the convictions for simple assault; the charges for the assault with a dangerous weapon are unimportant for this analysis because Mr. Chipps was acquitted of them (*i.e.*, he was not punished for them at all, let alone twice). We also note that we cannot avoid the double-jeopardy issue just because his sentences for the simple assault convictions run concurrently with the much longer sentence for assault resulting in serious bodily injury, with which we find no fault. *Cf. United States v. Smith*, 601 F.2d 972, 973-74 (8th Cir. 1979), *cert. denied*, 444 U.S. 879 (1979). The special assessments charged to Mr. Chipps suffice to give him an interest in not being wrongfully convicted of simple assault, *see United States v. Christner*, 66 F.3d 922, 927 (8th Cir. 1995), though he has other reasons to want to avoid a redundant simple-assault conviction, *see Ball v. United States*, 470 U.S. 856, 864-65 (1985). Although we are aware that *Christner* deals with larger special assessments, *see id.*, we see no legal grounds on which to distinguish the larger special assessments at stake in that case from the smaller ones in play here.

The first item we look to when attempting to decipher Congress's intent is the statutory language. We find the text of the statute itself of little help in determining the unit of prosecution. Section 113(a) provides that individuals who commit "assault" "within the ... territorial jurisdiction of the United States" are subject to certain punishments. Each of the seven subsections of § 113(a) sets forth the punishment available for a different type of assault. Although six of the subsections include facts that distinguish the particular assault type, *e.g.*, "assault resulting in serious bodily injury," 18 U.S.C. § 113(a)(6), the subsection on which Mr. Chipps's double-jeopardy claim is based describes the crime only as "simple assault," 18 U.S.C. § 113(a)(5).

When looking at the language of a statute, however, we also consider interpretive canons, one of which provides that, "absent contrary indications," Congress is presumed to have adopted "the common law definition of statutory terms," *United States v. Shabani*, 513 U.S. 10, 13 (1994); *see United States v. Yates*, 304 F.3d 818, 821-22 (8th Cir. 2002), *cert. denied*, 538 U.S. 909 (2003). We have made apparently divergent statements about whether Congress intended to equate the term "simple assault" in § 113(a)(5) with common-law assault. *Compare United States v. Whitefeather*, 275 F.3d 741, 743 (8th Cir. 2002), *with Yates*, 304 F.3d at 822. But no matter; nothing in the common-law definition of assault indicates whether assault is a course-of-conduct offense or a separate-act offense. *See United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) (per curiam); *United States v. Bell*, 505 F.2d 539, 540 (7th Cir. 1974).

We turn now to the legislative history and the statutory scheme. We have not found any suggestion in the legislative history that Congress took a position on the question facing us. The statutory scheme, "*i.e.*, the congressional intent as manifested in the overall legislative plan," *Kinsley*, 518 F.2d at 669-70, similarly sheds no light on whether Congress meant to punish assault as a course of conduct or separate acts.

-13-

We conclude that Congress has not specified the unit of prosecution for simple assault with clarity, and so we apply the rule of lenity and resolve the doubt in favor of Mr. Chipps. Applying the rule of lenity here means interpreting assault to be a course-of-conduct offense, as that limits his sentencing exposure. To determine how many courses of conduct Mr. Chipps undertook, we apply the so-called "impulse test." *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 224 (1952). Under the impulse test, we "treat[] as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single 'impulse.' " *Id.* Given the uninterrupted nature of the attack on Mr. Pourier, we discern a single impulse underlying Mr. Chipps's assaultive conduct. Thus, the jury could have legally convicted Mr. Chipps of only one of the two simple assault charges. Because the sentences for the simple assault counts are concurrent, there is no need for resentencing, and we direct the district court to vacate the second of the two simple assault convictions. *See United States v. Easom,* 569 F.2d 457, 459 (8th Cir. 1978)

We reject, however, Mr. Chipps's argument that the multiplicitous counts of assault tainted the jury's deliberations as to all of the charges. The district court's instructions to the jury indicated that each charge was to be considered separately. For example, the judge instructed the jurors that if "the evidence fails to establish the defendant's guilt beyond a reasonable doubt on an offense charged against him, then the defendant should have your vote for a not guilty verdict on that offense." Juries are presumed to follow instructions. *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000). We conclude that these instructions ensured that the jury's verdict on the valid counts was not influenced by the multiplicitous counts. *See United States v. Reedy*, 304 F.3d 358, 368-69 (5th Cir. 2002). Additionally, the evidence as to the valid counts was strong, so any effect that the multiplicitous counts could have had on the jury would have been negligible, and not sufficiently strong to warrant retrial. *See United States v. Sue*, 586 F.2d 70, 71-72 (8th Cir. 1978) (per curiam).

VI.

Mr. Chipps contends that the district court erred by admitting evidence that he fled from law enforcement. Evidence of flight is admissible and has probative value as circumstantial evidence of consciousness of guilt. *United States v. Melson*, 7 F.3d 750, 752 (8th Cir. 1993). We have indicated, however, that courts should be cautious in admitting evidence of flight because it is often only marginally probative of guilt. *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991), *cert. denied*, 502 U.S. 886 (1991). To determine whether flight evidence is sufficiently probative of guilt to be admissible, we look to whether the evidence supports the following four inferences: that the defendant fled; that the flight evinced consciousness of guilt; that the guilt related to the crime charged in this case; and that the consciousness of guilt flowed from actual guilt of the crime charged. *Id.*

The district court properly admitted the flight evidence. That Mr. Chipps did not turn himself in, could not be found for two years, and sped away from the police supported the inference that he fled. The fact that Mr. Chipps fled within days of being given a copy of the warrant for his arrest for the assault on Mr. Pourier supported the inferences that he fled because of consciousness guilt and that the guilt stemmed from the assault on Mr. Pourier. *See Hankins*, 931 F.2d at 1262. Lastly, there was sufficient evidence in the form of the trail of blood and bloody sweatshirt found on Mr. Chipps's property, in addition to the statements of Mr. Red Elk and Mr. Pourier, to support the inference that Mr. Chipps's consciousness of guilt about the assault derived from actually having assaulted Mr. Pourier. *Cf. United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005)

VII.

We next determine whether the district court erred by allowing the government to cross-examine Mr. Chipps about an affair that he had had with Sheila Lamont, a woman with whom Mr. Pourier was having a relationship at the time of the assault. On direct examination, Mr. Chipps was asked whether he had had a motive to assault

-15-

Mr. Pourier. He stated that he had not had one. On cross-examination, Mr. Chipps admitted that he had had sex with Ms. Lamont.

The government's cross-examination was not improper. Federal Rule of Evidence 611(b) provides that the scope of cross-examination "should be limited to the subject matter of the direct examination." The government's questions about the affair with Ms. Lamont relate to whether Mr. Chipps was motivated to assault Mr. Pourier because of jealousy over Mr. Pourier's relationship with Ms. Lamont. The existence of a motive for a defendant to commit an assault is a relevant matter to put before the jury. *Cf. United States v. Bogan*, 267 F.3d 614, 621 (7th Cir. 2001). Finally, given the deferential standard of review that we apply to a district court's balancing under Rule 403, we cannot conclude that the court erred in determining that the probative value of the evidence outweighed the danger of unfair prejudice that it presented. *See United States v. Ruiz-Estrada*, 312 F.3d 398, 403 (8th Cir. 2002), *cert. denied*, 538 U.S. 968 (2003).

VIII.

Finally, we conclude that Mr. Chipps is not entitled to relief based on the district court's erroneous use of the mandatory guidelines regime to sentence him. Mr. Chipps did not raise the *Booker* issue (or any of its cognates) in the district court, so we review the matter for plain error. To demonstrate an entitlement to plain error relief, Mr. Chipps would have to show, based on the record as a whole, that there is a reasonable probability that he would have received a more favorable sentence had the judge sentenced him under the advisory guidelines system. *United States v. Pirani*, 406 F.3d 543, 552 (8th Cir. 2005) (en banc). Mr. Chipps cannot make this showing; nothing in the record indicates that the judge would have given him a more favorable sentence under the advisory regime.

## IX.

For the above stated reasons, we remand this case to the district court with an order to vacate the second of Mr. Chipps's simple assault convictions, and we affirm his other two convictions and his sentence.

_____