# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1882
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Emly

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: December 18, 2013
Filed: April 3, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Christopher Emly was convicted of one count of receipt of materials involving the sexual exploitation of children, in violation of 18 U.S.C. § 2252(a)(2), and three counts of possession of materials involving the sexual exploitation of children, in violation of 18 U.S.C. § 2252(a)(4)(B). On appeal, Emly alleges three errors: (1) his multiple convictions for possession violate the Double Jeopardy Clause; (2) the jury's guilty verdict on both the greater receipt offense and its lesser included possession

offense violates the Double Jeopardy Clause; and (3) the jury instructions constructively amended the indictment. We affirm in part and remand with directions.

## I. Background

In October 2010, Special Agent James Shaw of the North Dakota Bureau of Criminal Investigation discovered several files containing child pornography that he traced to a computer located in Emly's mother's home. Agent Shaw obtained a search warrant for the residence. During the search, Agent Shaw seized a laptop computer that contained the files he had first discovered. He also found and seized a Secure Digital card (SD card), a compact disc (CD), and a desktop computer tower. All of these items were seized from a room identified as Emly's bedroom.

Forensic analysis of the laptop revealed that LimeWire, a file-sharing software program that allows users to receive and distribute files over the Internet, had been installed on the laptop, but had been subsequently uninstalled prior to the search. The analysis also revealed approximately 629 image files containing child pornography on the laptop. The SD card contained copies of 481 of the child pornography files found on Emly's laptop. Additionally, the CD and the desktop computer each contained the same set of six to eight illegal images. These images were not part of the 629 image files found on the laptop, but the evidence suggests that Emly burned the six to eight images onto the CD from the laptop and then transferred the images onto the desktop computer tower. After Emly successfully burned the six to eight images onto the CD, these images were automatically deleted from the laptop.

A federal grand jury returned an indictment charging Emly with the counts set forth above. Specifically, the indictment charged Emly with one receipt count for using his laptop to receive child pornography files via LimeWire and one possession count each for the SD card, the CD, and the desktop computer tower. All three possession counts charged Emly with possession of child pornography on the same

day—the day the devices were seized—"on or about November 9, 2010." The district court denied Emly's pretrial motion to merge the three possession counts.

Emly proposed a jury instruction for the charged receipt offense, Instruction No. 9, based on the Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit. The government proposed a similar jury instruction but included language regarding the production of the child pornography that was absent from Emly's proposed instruction. The district court substantially adopted Emly's proposed instruction in its final jury instructions.

At trial, the district court instructed the jury on both the charged receipt offense and its lesser included offense of possession. The instruction on the lesser included offense was a classic "stair-step" instruction, ordering the jury to consider the lesser included offense only if it found the defendant not guilty or if it could not reach a verdict on the receipt offense. The Special Verdict Form also instructed the jury to find Emly either not guilty or guilty of the receipt offense and further instructed the jury to deliberate on the lesser included possession offense only if it found Emly not guilty of the receipt offense. Despite the instructions, the jury returned a guilty verdict on both the receipt offense and its lesser included possession offense. The district court did not, however, enter judgment of conviction on the lesser included possession offense. The jury also returned a guilty verdict on each of the three possession counts. The district court polled the jury to ensure that the verdict was unanimous and, in response, each juror confirmed that the verdict read in court was his or her verdict. Emly did not object to any of these matters at trial.

The district court sentenced Emly to 228 months' imprisonment on the receipt count and 120 months' imprisonment on each count of possession. The sentences were ordered to run concurrently. This appeal followed.

## II.  Discussion

### A.  Multiplicity

Emly argues that under § 2252(a)(4)(B), the three possession counts listed in the indictment are multiplicitous because they charge the same crime.  He contends that the conduct charged in the indictment—possessing copies of several different files on separate devices—constitutes only a single violation of § 2252(a)(4)(B). We agree.

"We review *de novo* the district court's determination that counts in an indictment are multiplicitous."  United States v. Platter, 514 F.3d 782, 785 (8th Cir. 2008).  "The rule against multiplicitous prosecutions is based on the Fifth Amendment's Double Jeopardy Clause, which 'protects against multiple punishments for the same offense.'"  United States v. Hinkeldey, 626 F.3d 1010, 1013 (8th Cir. 2010) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)).  When an indictment includes more than one count charging the same statutory violation, "the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution."  United States v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005).  A unit of prosecution is "the aspect of criminal activity that Congress intended to punish." Id. at 448.  "When Congress fails to establish the unit of prosecution 'clearly and without ambiguity,' we resolve doubt as to congressional intent in favor of lenity for the defendant."  Id. (quoting Bell v. United States, 349 U.S. 81, 84 (1955)).

Section 2252(a)(4)(B) makes it a crime to

> knowingly possess[] . . . 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction . . . if--
> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct[.]

-4-

Whether § 2252(a)(4)(B) permits a charge for each matter possessed in violation of the statute is a question of first impression in our circuit. We have, however, suggested that the language in § 2252(a)(4)(B) manifests Congress' intent to include multiple matters in a single unit of prosecution. In United States v. Hinkeldey, 626 F.3d 1010, 1011 (8th Cir. 2010), the defendant was convicted of six counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The indictment charged one possession count each for a computer, a zip drive, and four computer disks that contained child pornography. Id. at 1012. Section 2252A(a)(5)(B) makes it a crime to "knowingly possess[] . . . *any* book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography" (emphasis added). On appeal, the defendant argued that the counts of possession were multiplicitous because the simultaneous possession of overlapping files on separate devices did not constitute distinct possession crimes under § 2252A(a)(5)(B). Hinkeldey, 626 F.3d at 1012-13. We held that § 2252A(a)(5)(B) permits a separate count for each type of material or storage device possessed. Id. at 1013. In so holding, we distinguished the language of § 2252A(a)(5)(B) from that of § 2252(a)(4)(B): "Unlike the term 'any' in § 2252A(a)(5)(B), the phrase '1 or more' in § 2252(a)(4)(B) arguably manifests a clear intention to include multiple materials in a single unit of prosecution." Id. at 1014.

In addition to Hinkeldey, Emly points to two cases, one from the Second Circuit and the other from the First Circuit, that support his interpretation of § 2252(a)(4)(B): United States v. Polouizzi, 564 F.3d 142 (2d Cir. 2009), and United States v. Chiaradio, 684 F.3d 265 (1st Cir. 2012). In Polouizzi, the defendant was charged with eleven counts of possession under § 2252(a)(4)(B) for possessing eleven illegal image files, collectively found on three hard drives in two separate rooms. 564 F.3d at 146-48. The government argued that each computer file containing an image was a "matter" under the statute and "that the possession of each 'matter' is a separate

violation of § 2252(a)(4)(B)." Id. at 155. The court held that § 2252(a)(4)(B) did not permit the conviction of the defendant on multiple possession counts under any interpretation of "matter." Id. at 155 n.4. The court concluded that "[b]ased on the clear language of the statute . . . Congress intended to subject a person who simultaneously possesses multiple books, magazines, periodicals, films, video tapes, or other matter containing a visual depiction of child pornography to only one conviction under 18 U.S.C. § 2252(a)(4)(B)." Id. at 155. The court reached its conclusion by looking to the plain language of the statute and contrasting the term "1 or more" in § 2252(a)(4)(B) with the word "any." Id. Further, the court pointed to § 2252(c)(1), which provides an affirmative defense to a § 2252(a)(4) charge if the defendant "possessed less than three matters containing [prohibited images]," and reasoned that "[s]uch a defense necessarily contemplates that a person who possessed two matters containing prohibited images would face a single charge of violating § 2252(a)(4)(B)." Id. (first alteration in original).

In Chiaradio, the First Circuit followed the Second Circuit's lead. There, the defendant was charged with two counts of possession under § 2252(a)(4)(B) based on images of child pornography found on two separate computers. Chiaradio, 684 F.3d at 272-73. The computers were located in different rooms and had different functions (one was used for acquiring the images and the other was used for storing them) but were linked (they shared an internal network through which files could freely move back and forth). Id. at 273. Some of the images contained on the computers overlapped. Id. In determining whether Congress intended to punish the possession of each matter in violation of the statute separately, the court stated that

> the legislative history contains no indication that Congress intended to permit multiple prosecutions when it used the term "one or more" in section 2252(a)(4)(B), nor is there any inkling that Congress intended to allow prosecutors to divide simultaneous possession by a single

-6-

individual of several matters containing child pornography into multiple units of prosecution[.]

Id. at 274. Thus, the court held that a defendant "who simultaneously possesses a multitude of forbidden images at a single time and in a single place will have committed only a single offense." Id.

Additionally, the Chiaradio court rejected the government's attempt to distinguish Polouizzi based on the fact that the computers were found in separate rooms. Id. at 275. The court reasoned that "[i]f a defendant had multiple photo albums of images in his bedroom and living room and periodically swapped images between them, two convictions—one for each album—would not stand." Id. Further, the court highlighted that the term "1 or more" in § 2252(a)(4)(B) "contrasts sharply" with the word "any" found in § 2252A(a)(5)(B). Id. Citing to Hinkeldey, the court concluded that "[t]he phrase 'one or more,' unlike the word 'any,' strongly suggests Congress's intent that multiple matters be included in a single unit of prosecution." Id.

The government argues that these two cases are not persuasive because they involve materially different facts and because their holdings run afoul of the plain language of § 2252(a)(4)(B). As the government would have it, by copying the files onto three different devices, creating three separate matters, on three separate occasions, Emly committed three separate violations of the statute. The government labors to distinguish the facts of Chiaradio and Polouizzi. It argues that the facts of Chiaradio are materially different because the two computers on which the child pornography was possessed were linked together, whereas the devices involved here were not connected, were created at different times, and contained different images. We consider these to be irrelevant distinctions. The significant fact is that Emly possessed all of the images found on the separate devices on one medium prior to copying and transferring them onto the separate devices. Additionally, all of the

devices were seized from one location, Emly's bedroom. Although certain of the devices contained images different from the others, the images were not distinct in that they all originated from Emly's laptop. Under the reasoning expounded in Chiaradio, the periodic placement of images or copies of images in different storage containers, such as photo albums or computers, does not constitute a violation of § 2252(a)(4)(B) each time the images are moved or copied in a manner that creates a new matter under the statute. There is no functional difference between identical copies of a single image stored on two different devices and one copy of the same image accessible on two or more computers located in different places.

The government attempts to distinguish the facts in Polouizzi by arguing that in that case no evidence was presented showing that the defendant had acquired possession of the eleven image files on different occasions, whereas evidence here showed Emly "possessed hundreds of unique images on three different media, acquired during three different transactions." Although Emly copied the images onto separate devices at different times, the images found on the three separate devices all originated from the same source, Emly's laptop, were all already possessed at the time that each new matter was created, and were then merely stored on different devices. The act of copying or transferring files onto different devices in itself does not constitute an independent violation of the statute. See Chiaradio, 684 F.3d at 275. Accordingly, Emly cannot be charged with three counts of possession solely because he moved the location of illegal images to a different storage device on three separate occasions. The government also argues that, unlike Polouizzi, the number of charges in this case corresponds to the number of devices rather than the number of image files. But as the Polouizzi court stated, it is immaterial whether the charges are based on the number of files or the number of hard drives that contained the files because "Congress intended to subject a person who simultaneously possesses multiple books, magazines, periodicals, films, video tapes, or other matter containing a visual

depiction of child pornography to only one conviction under 18 U.S.C. § 2252(a)(4)(B)."  564 F.3d at 155.

Finally, the government argues that the legislative history of § 2252(a)(4)(B) confirms that the language of the statute permits charging multiple counts, one for each matter possessed.  In support, the government points to Congress' amendment of § 2252(a)(4)(B) in 1998, replacing the "3 or more" requirement with "1 or more."  The court in Chiaradio considered the same argument and rejected it.  684 F.3d at 274.  Congress amended the statute in this manner to prohibit the possession of a single image, see 144 Cong. Rec. 25,239 (1998) (statement of Sen. Orrin Hatch), ensuring that the statute criminalized the possession of any amount of child pornography.  This change does not indicate that Congress intended to permit a separate charge for each image or matter possessed.

As our holding in Hinkeldey indicates, the government could have charged Emly with multiple counts of possession under § 2252A(a)(5)(B), but it chose not to do so.  We will not read § 2252(a)(4)(B) in a manner that would justify the government's charging decision.  See Chiaradio, 684 F.3d at 276.  We thus conclude that the three possession counts are multiplicitous.

We turn, then, to consider the appropriate remedy necessitated by our holding.  Emly argues that his case must be remanded for a new trial on a single possession count.  A multiplicitous indictment requires remand for a new trial only if the multiplicity prejudices the defendant.  See United States v. Roy, 408 F.3d 484, 492 (8th Cir. 2005).  Emly asserts that the multiplicitous counts prejudiced him because "the prolix pleading may have [had] some psychological effect upon [the] jury by suggesting to it that [Emly] ha[d] committed not one but several crimes."  United States v. Sue, 586 F.2d 70, 71 (8th Cir. 1978) (per curiam) (quoting United States v. Ketchum, 320 F.2d 3, 8 (2d Cir. 1963)).

-9-

We are not persuaded by Emly's argument that the multiplicitous counts of possession tainted the jury's deliberations. We have held that instructions that direct the jury to consider each charge separately ensure that the jury's verdict on the valid counts will not be influenced by the multiplicitous counts. Chipps, 410 F.3d at 449; see also United States v. Robertson, 606 F.3d 943, 953 (8th Cir. 2010). Here, the district court instructed the jury to consider each charge separately. Furthermore, when evidence as to the valid counts is strong, we have held that "any effect that the multiplicitous counts could have had on the jury would have been negligible, and not sufficiently strong to warrant retrial." Chipps, 410 F.3d at 449. The government presented substantial evidence of Emly's possession of child pornography on the SD card, CD, and desktop computer tower. Forensic evidence demonstrates that Emly acquired the child pornography from LimeWire, that he stored the images on the various devices, and that the devices were located in his bedroom and accessed solely by him.

When no prejudice has been shown and the district court has imposed concurrent sentences on the multiplicitous counts, the appropriate remedy is a directive to vacate the convictions on the multiplicitous counts. See United States v. Grimes, 702 F.3d 460, 469 (8th Cir. 2012); Robertson, 606 F.3d at 953; Chipps, 410 F.3d at 449; Roy, 408 F.3d at 492; Sue, 586 F.2d at 71-73. "The 'principal danger that the multiplicity doctrine addresses' is the risk that a defendant might receive multiple punishments for a single offense." Roy, 408 F.3d at 492 (quoting United States v. Webber, 255 F.3d 523, 527 (8th Cir. 2001)). Because Emly received concurrent sentences on all of his convictions, a remand with directions that the convictions on two of the three possession counts be vacated renders a new trial unnecessary.

B. Jury Verdict

Emly next argues that the jury erred in convicting him on the receipt count because it returned a guilty verdict on both the receipt offense and the lesser included possession offense. Emly contends that the district court did not sufficiently cure this error by entering judgment of conviction and sentencing him solely on the receipt offense. He asks that his case be remanded for new trial on the receipt count.[1] Because Emly failed to raise this issue before the district court, we review the district court's decision for plain error. See Robertson, 606 F.3d at 949-50. "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." United States v. Mireles, 617 F.3d 1009, 1012 (8th Cir. 2010) (quoting United States v. Bain, 586 F.3d 634, 640 (8th Cir. 2009) (per curiam)). "A plain error will not be corrected unless (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1013 (quoting Bain, 586 F.3d at 640).

In United States v. Howard, 507 F.2d 559 (8th Cir. 1974), the defendant was charged with two counts of distributing heroin. The district court instructed the jury that if it found that the defendant possessed heroin but did not distribute it, the jury could return a guilty verdict on the lesser included possession offense. Id. at 560-61. Despite the district court's instructions, the jury returned a guilty verdict for both distribution and possession on both counts. Id. at 561. We held that "[w]hile the jury failed to follow the court's instructions, a finding of guilty on the lesser offenses as

---

[1]Emly relies on Milanovich v. United States, 365 U.S. 551 (1961), in support of his argument. Milanovich is inapposite, however, because Emly was found guilty of both a greater and lesser included offense, not two distinct crimes involving inconsistent facts. See United States v. Belt, 516 F.2d 873, 875-76 n.8 (8th Cir. 1975) (holding that when "there is a greater and lesser included offense and no inconsistency in their respective elements but only an additional element in the greater offense . . . the problem in Milanovich is absent").

-11-

well as on the major offenses creates per se no inconsistency in conclusions," because "in finding the defendant guilty of the major offenses the jury must necessarily have concluded that all of the elements of the lesser included offenses were present." Id. at 563. Further, we concluded that the district court "cured any ambiguity in the verdicts by polling the jurors in open court and determining that they each intended to find [the defendant] guilty . . . as charged in the indictment." Id. While we acknowledged that the district court should not have accepted both sets of verdicts, we held that the verdicts on the lesser included offenses were mere surplusage. Id. We thus remanded the case to the district court with instructions to vacate the convictions on the two lesser included offenses. Id.

A jury's guilty verdict on both a greater and lesser included offense is not plainly inconsistent or ambiguous. See id.; see also United States v. Poole, 545 F.3d 916, 919 (10th Cir. 2008). Every element necessary to a finding of guilt on the lesser included offense of possession was also required to convict Emly of the greater offense of receipt. The only evident problem a guilty verdict in these circumstances poses is one of double counting, the risk of which the district court eliminated by entering judgment of conviction solely on the greater receipt offense.

Even assuming, as Emly contends, that the jury's verdict was ambiguous, it is not accurate to state that the district court took no remedial measures. Here, the district court polled the jury to ensure that each juror intended to convict Emly on each of the offenses. All jurors responded in the affirmative. The district court has various remedies available to cure an ambiguous verdict, see Howard, 507 F.2d at 562, "and, in the absence of a contemporaneous objection at trial, we should not second guess its choice of remedy unless its decision was plainly erroneous under the circumstances[,]" see Poole, 545 F.3d at 922. The district court ensured that the guilty verdict was not ambiguous by polling the jury, and it eliminated any threat of double counting by entering judgment of conviction only on the greater receipt offense.

-12-

## C. Constructive Amendment

Emly argues that the district court's jury instruction on the receipt charge constructively amended the indictment. Because Emly failed to object to the instruction at trial, we review the district court's decision for plain error. See United States v. Gavin, 583 F.3d 542, 546-47 (8th Cir. 2009) ("In the absence of objection at trial, we need not precisely decide whether constructive amendment compels reversal in all cases."); cf. United States v. Gill, 513 F.3d 836, 850 (8th Cir. 2008) (declining to decide whether a constructive amendment constitutes reversible error per se where the jury instructions did not constructively amend the indictment). "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner . . . that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007). "In order to determine whether an indictment was constructively amended, we consider whether the jury instructions, taken as a whole, 'created a substantial likelihood that the defendant was convicted of an uncharged offense.'" United States v. Buchanan, 574 F.3d 554, 564 (8th Cir. 2009) (quoting Whirlwind Soldier, 499 F.3d at 870).

The indictment charged Emly with "knowingly receiv[ing] visual depictions which had been mailed, shipped, and transported in interstate commerce by any means, including by computer, the production of which visual depictions involved the use of minors engaging in sexually explicit conduct and which depictions were of such conduct[.]" Emly argues that the jury instructions constructively amended the indictment because Instruction No. 9 omitted the production element and thus did not require the jury to find that the visual depictions had been produced by the use of a minor.

-13-

Instruction No. 9 provided:

*One*, that beginning on or about October 2010 and continuing on until on or about November 9, 2010, the defendant knowingly received visual depictions of minors engaging in sexually explicit conduct using a Compaq Presario laptop computer bearing Serial Number CNF022CG25 containing a Toshiba 250 BG hard drive bearing Serial Number 50N8B0RJB;

*Two*, the defendant knew the visual depictions portrayed at least one minor engaged in sexually explicit conduct; and

*Three*, the visual depictions were shipped or transported in or affecting interstate or foreign commerce by any means of interstate or foreign commerce including by computer.

We conclude that Instruction No. 9 did not constructively amend the indictment, because it fairly captured the production element of the crime. Emly stipulated that the images he received and possessed depicted actual children. Accordingly, minors must have been used in the production of the images in this case. So, implicit in finding that the images Emly received contained actual minors is the finding that the images were produced using minors.

## III. Conclusion

We affirm Emly's conviction of one count of receipt of child pornography. We remand the case to the district court with directions that it vacate all but one of Emly's possession convictions.

_____

-14-