[Crim. No. 2335. Third Dist. Aug. 25, 1952.]

THE PEOPLE, Respondent, v. VITO GERUNDO, Appellant.

Clarence N. Riggins for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier and Wallace G. Colthurst, Deputy Attorneys General, for Respondent.

ADAMS, P. J.—On October 8, 1951, an information was filed in Napa County in four separate counts. The first charged that defendant, in Napa County, on or about May 1, 1950, did "wilfully, unlawfully, fradulently and felonously make, forge and counterfeit a certain check and order in writing for the payment of money, and did then and there utter, publish and pass the same, knowing that said check was false, forged and counterfeited as aforesaid, with the intent" to cheat and defraud V. C. Fitzwater and Bank of America, the said check reading as follows:

"90-226        First Napa Branch        90-226

BANK OF AMERICA National Trust & Savings
                                Association No. ———
                        Napa, Calif. May 1, 1950
Pay to the order of MASONIC TRESTLE BOARD $30.00
                                                           100
THIRTY ............................ DOLLARS
                                · V. C. FITZWATER
Endorsement:   Pay to the order of Anglo-California
                        Trust Company
                        Market-Jones Branch
                        Masonic Trestle Board, 83 McAllister
                        VITO GERUNDO"

The second count contained a charge in similar language regarding a check for $7.50 dated at Napa, March 24, 1950, purporting to have been signed by V. C. Fitzwater, payable to cash and endorsed by Gerundo.

The third count charged, in the same language, the writing, etc., of a check of $7.50 dated in Napa, April 5, 1950, payable to Masonic Trestle Board purporting to have been signed by Roger F. Goodnow and endorsed "Masonic Trestle Board By V. Gerundo," and a second endorsement by the Plaza Hotel.

The fourth count charged in similar language the writing, etc., of a check for $50, dated Napa, April 29, payable to

Masonic Trestle Board, purporting to have been signed "Ransford Printing Co. Jess R. Ransford," and endorsed by Masonic Trestle Board.

After trial by a jury defendant was convicted on all four counts. The court sentenced him for the term provided by law on each count with sentences to run concurrently and to run concurrently with any other judgment rendered against defendant. A motion for a new trial was denied and defendant has appealed, both from the judgment and from the order denying the motion, contending, first, that the Superior Court of Napa County did not have jurisdiction of the first and fourth counts, second, that the trial court erred in instructing the jury, and, third, erred in receiving in evidence certain papers claimed to have been found among defendant's effects.

Regarding the first and fourth counts, appellant urges that the evidence showed that the offenses charged therein were committed in San Francisco and no part of them was committed in Napa County.

M. P. Brown, publisher of the Masonic Trestle Board, testified that in March, 1950, defendant called upon him in San Francisco and sought the privilege of selling advertising in the Trestle Board in Napa and Fairfield. Brown acceded and it was agreed that Gerundo was to be paid 50 per cent of any fees for advertising which he secured, to be paid when the advertising was paid for. In the first part of May, 1950, defendant gave Brown two subscriptions for advertising together with the two checks referred to in counts 1 and 4 of the information, the check in the sum of $30 purportedly signed by V. C. Fitzwater and the other check in the sum of $50 purportedly signed by Jess R. Ransford. He also gave him a subscription signed by Roger F. Goodnow, dated April 5, 1950, payable on publication. Brown told defendant he would confirm the two checks by telephone before paying his commission, whereupon defendant said that he would return after lunch. Brown was unsuccessful in his attempt to confirm the checks by telephone and defendant never returned to Brown's office. Brown deposited the two checks with his San Francisco bank for collection and it presented them to the Napa bank upon which they were drawn, which latter bank dishonored them.

Fitzwater, a painting contractor in Napa, testified that Gerundo solicited him to place an advertisement in the Trestle

Board and Fitzwater gave defendant a check for $7.50 with payee's name blank. This check he testified was the only one he ever gave to Gerundo and it was never cashed. On being shown another check payable to cash in the sum of $7.50, and the check for $30 purportedly signed by him payable to the Trestle Board, he testified he had never signed either. He was also shown seven blank checks purporting to be signed by him, but he denied that he had signed them. The check for $7.50, dated March 24th, purportedly signed by Fitzwater, was endorsed and cashed by defendant personally, in Napa.

Jess R. Ransford, who had formerly conducted a printing business in Napa which he had sold in 1948, testified that the $50 check referred to in count 4, purportedly signed by him, was not signed by him, that he never had authorized any one to sign his name, had never subscribed to advertising in the Masonic Trestle Board and never had any business dealings with defendant and that he did not maintain a bank account in the company's name after selling out.

As to the $30 and $50 checks above mentioned, while apparently conceding that these checks were forged, appellant argues that since they were delivered to Trestle Board in San Francisco and deposited in its bank there that, though they were subsequently forwarded to the Bank of America in Napa which dishonored them, no offense was committed in Napa County and that the city and county of San Francisco alone had jurisdiction of the offenses charged in counts 1 and 4. In this behalf he relies upon the case of *People v. Ballas,* 55 Cal.App. 748 [204 P. 401], decided by this court in 1921. However, a perusal of that decision shows that what the court held was that the "uttering" of a forged check in San Francisco did not give the court of Yolo County jurisdiction of the offense; that the check was deposited in San Francisco for credit; and the fact that it was thereafter dishonored by the bank in Yolo County upon which it was drawn, did not confer jurisdiction upon the Yolo County court.

We are of the opinion that the facts in the case before us distinguish it definitely from the Ballas case. ▮ The checks referred to in counts 1 and 4 were deposited in a San Francisco bank for collection. As is hereinabove stated, the defendant Gerundo was charged with making, forging and counterfeiting the checks in Napa County, as well as with the uttering, publishing and passing same. Therefore, if

there is evidence in the record before us which justified a conclusion that Gerundo made, forged or counterfeited the $30 and $50 checks in Napa County that court unquestionably had jurisdiction in view of the provisions of section 781 of the Penal Code, which provides:

"When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

*People* v. *Megladdery*, 40 Cal.App.2d 748 [106 P.2d 84], would seem to furnish ample authority for our conclusion regarding the charges against Gerundo. In this court all intendments favor the judgment, and there is evidence in the record before us which we think is ample to show that the offenses charged in counts 1 and 4 were committed in part, at least, in Napa County. Defendant was residing in Napa in March when he solicited Brown for authority to sell advertising in Trestle Board, and he continued to reside there until after the middle of April when he claims that he left. There is evidence that about September 1, 1950, Gerundo rented a trailer in Stockton, paid two months' rental, then left without giving notice (by his own testimony after staying a month and ten days), leaving some effects therein and the door unlocked. Some two months' rental was unpaid. Thereafter the owner of the trailer ordered that any effects left therein be removed and stored in a garage, which was done. These effects included a brief case and a box containing papers, some old clothes and a lot of old magazines. On March 21, 1951, Mr. Schoales, an investigator from the Department of Justice, was given access to the garage by the owner thereof, where he found the legitimate check for $7.50 which had been given to defendant by Fitzwater. He also found seven blank checks purporting to be signed by Fitzwater. There were also among these papers a check of Roger F. Goodnow, which had not been cashed, and seven blank checks of the Ransford Printing Company. There was also an operator's license issued by the Department of Motor Vehicles to Julius Benjamin Nathan (a name by which defendant admitted he was frequently known), a letterhead of the Tool and Production Engineering Company, dated June 30, 1949, containing the purported signature of J. B. Nathan as owner and the purported signature of defendant, forms of warrants of the city treasurer of Napa and a number of miscellaneous cancelled checks.

There also were a group of Trestle Board billheads, stationery of Fitzwater, blank checks on all three Napa banks and several calling cards with the name "Ransford Printing Company" on them together with the names "Robert B. Oleson" and "Vito Gerundo." Oleson, according to testimony, was an owner of Ransford Printing Company from some time in March, 1950, until August, when he left for parts unknown.

Sherwood Morrill, examiner of questioned documents for the California State Bureau of Criminal Identification, testified that he secured numerous exemplars of defendant's handwriting and concluded therefrom that the $7.50 check cashed by defendant in Napa and the seven blank checks found in the Stockton garage bearing the purported signatures of Fitzwater had been traced from his legitimate check. As to the Jess R. Ransford check for $50 (which Gerundo had left with Mr. Brown of Trestle Board), Morrill testified that it did not even pictorially resemble the genuine signature of Mr. Ransford, but that such writing was the same as that on the forged checks; and that the hand printing on the $30 check and the $50 check was that of the same person and was the same as the hand printing on other writings identified as having been executed by defendant.

A. C. Salvadori, assistant cashier at the Napa branch of the Bank of America, testified that defendant on April 3d deposited to the credit of his own account in that bank the forged Fitzwater check for $7.50. Henry Ehlen, assistant cashier in the Bank of America in Napa, testified that his bank cashed the $30 forged Fitzwater check, but that, when Fitzwater received his bank statement and the cancelled check, he protested. Fitzwater testified that he gave Gerundo but one check, to wit, the $7.50 check which was uncashed and found among Gerundo's effects in the trailer in Stockton, and that he did not sign the $7.50 check which Gerundo cashed in Napa nor the check for $30 tendered to Brown, nor the blank checks purporting to be signed by him which were also found among Gerundo's effects. Roger F. Goodnow testified that in the early part of April, 1950, at Gerundo's solicitation he agreed to take an advertisement in the Trestle Board for which he gave defendant a check for $7.50 dated April 5th. He identified one check payable to the Trestle Board which was the one signed by him, but said that the second check which purported to be signed by him and which had been cashed by Gerundo had

not been so signed. The forging of this check was the subject of the charge in the third count of the information.

While it is true that the checks referred to in counts 1 and 4 bore dates subsequent to the time when, as defendant contends, he left Napa, these checks were shown to have been forged and the jury was not bound to accept the dates thereon as the dates when they were actually written; and the evidence above set forth fully justifies the inference that they were actually written in Napa County where the Fitzwater check with the traced signature and the forged Goodnow check were cashed by defendant and where he obviously secured the Ransford Printing Company blank checks.

The evidence was sufficient to justify an inference that in Napa County defendant embarked upon a scheme to forge checks and to secure money for himself by cashing them or by tendering them to Brown and securing commissions for advertising which had not been purchased. All of the checks were drawn on Napa banks, and were titled "Napa, Calif." It was held in *People* v. *Anderson*, 90 Cal.App.2d 326 [202 P.2d 1044], and *People* v. *Thorn*, 138 Cal.App. 714, 732 [33 P.2d 5], that the county in which preliminary arrangements for the commission of a crime are made is a proper county in which to prosecute the completed offense; and in *People* v. *Megladdery, supra,* it was held that venue may extend into any county into which the effects of the offense extend.

Defendant's next contention is that the trial court erred in instructing the jury as follows:

"Evidence was offered for the purpose of showing that the defendant committed other acts of forgery than those alleged against him in the information and for which he is now on trial. Such evidence was received not to prove distinct offenses or continual criminality, but for limited purposes only. On the question whether or not the defendant possessed knowledge of any fact, knowledge of which would have been involved in committing the crime charged against him in the information, you may consider, for such bearing, if any, as it might have on the question, the evidence that was offered to prove that previously to the time of said alleged crime he had committed a similar offense, but you may not consider for that purpose evidence of any later offense.

"On the question whether or not he was motivated by a fraudulent intent you may consider, for such bearing, if

any, as it might have on the question, all admitted evidence of other forgeries, subsequent as well as prior to the offense charged in this case. But you are not permitted to consider such evidence for any purpose other than as I have stated; and as to these purposes, you will weigh the evidence as you do all other.''

Appellant argues that this instruction was erroneous as no evidence of other forgeries was received. But even if that were so, the giving of the instruction was not reversible error. (*People* v. *Walker*, 69 Cal.App. 475, 497 [231 P. 572].)

Furthermore the court instructed the jury that:

''The Court has given you instructions embodying such rules of law as may be necessary to assist you in arriving at a verdict. As to some of these instructions, their applicability depends upon the light in which you view the evidence.

''The fact that the Court has given you instructions as to particular rules of law must not be taken by you as an indication that such rules are necessarily applicable to the cause on trial, or as indicating that the Court consider them necessarily applicable. Where there is a conflict of evidence, the question as to whether a particular rule of law is applicable depends frequently and solely upon the conclusion as to what the facts are, and the jury are the sole judges of the facts.

''If any instruction is applicable only if a particular situation or state of facts exists, and if you find that no such situation or state of facts exists, then you should not take such instructions into consideration in your deliberations.''

■ Defendant finally urges that the trial court erred in receiving some of the papers which had been removed from the trailer occupied by defendant. He urges that they were incompetent, irrelevant and immaterial, but he does not show that their admission resulted in any injury to him. His objection goes rather to their weight than to their admissibility—matters for the jury and the trial court. Also at the time that they were admitted the court instructed the jury that mere possession of them did not constitute commission of a crime; that they were admitted for the sole purpose of proving fraudulent intent and design and no other purpose, and then said: ''You will consider this testimony in view of that instruction. It will be up to you to determine whether or not this testimony is or is not, has

any connection with the alleged fraudulent intent of the defendant in this case. . . .

". . . When I refer to fraudulent intent or design I refer to the fraudulent intent that the defendant is alleged to have had in connection with the forgery of the four checks mentioned in the Information."

The evidence amply supports the verdicts, and we find no reversible error in the record.

The judgment and the order denying a new trial are both affirmed.

Peek, J., and Van Dyke, J., concurred.

A petition for a rehearing was denied September 4, 1952, and appellant's petition for a hearing by the Supreme Court was denied September 18, 1952.