2002 SD 125

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Mark Joseph SULLIVAN, Defendant and Appellant.**

**No. 22237.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 26, 2002.

Decided Oct. 9, 2002.

Mark Barnett, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

David R. Gienapp, Arneson, Issenhuth & Gienapp, Madison, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Mark Sullivan appeals his convictions on four counts of forgery. We affirm.

FACTS

[¶ 2.] From October 2000 to March 2001, Sullivan was employed by Ionex Communications of Sioux Falls. Ionex is a telephone service provider and Sullivan was employed as a sales representative working on a commission basis. In late 2000 and early 2001, Sullivan made a series of contacts with three different businessmen in Madison. One of the three men managed two branches of an agricultural service business. Each of the other two men owned their own business. None of the three agreed to purchase their business telephone services from Ionex.

[¶ 3.] In January 2001, Sullivan turned four sets of signed contracts into Ionex for the sale of services to the different businesses he had contacted in Madison. Sullivan later admitted signing the agricultural service manager's name on two of the sets of contracts and one of the business owner's names on a third set. An internal company investigation uncovered evidence that Sullivan forged the second business owner's name on the fourth set of contracts.

[¶ 4.] Sullivan was indicted in Lake County for four counts of forgery under SDCL 22–39–36: "Any person who, with intent to defraud, falsely makes, completes or alters a written instrument of any kind, or passes such an instrument is guilty of forgery. Forgery is a Class 5 felony." Sullivan waived a jury trial and his trial to the court was held on October 31, 2001. Just before trial, Sullivan's counsel made an oral motion to dismiss for improper venue in Lake County, which encompasses Madison, rather than Minnehaha County which encompasses Sioux Falls. The trial court denied the motion and the trial proceeded. The State presented testimony from various witnesses including three Ionex employees. The employees' testimony

generally established that Sullivan had turned the four contracts at issue into the Ionex office in Sioux Falls and that Sullivan was actually paid his commissions in Sioux Falls.

[¶ 5.] At the close of the State's case, Sullivan's counsel moved for a judgment of acquittal on the basis that the State's evidence failed to establish proper venue of the case in Lake County. The trial court denied the motion. Sullivan then took the stand on his own behalf and testified that the contracts he signed were actually signed in Sioux Falls. At the close of all the evidence, Sullivan's counsel renewed his acquittal motion on the basis of lack of proof of venue. The trial court afforded the parties an opportunity to brief the venue issue. It released its memorandum decision on November 19. The trial court found that Sullivan's contacts with the three Madison businessmen were indicative of the "intent to defraud" element of forgery, that the contacts established that part of an element of the offenses took place in Lake County and that this provided sufficient proof of venue in that county. Accordingly, the trial court denied Sullivan's acquittal motion and found him guilty on all four counts of forgery. The trial court subsequently entered formal findings of fact and conclusions of law on the venue issue and sentencing was conducted on December 17. Sullivan was sentenced to concurrent four year terms in the penitentiary on each forgery count. Execution of the sentences was suspended on various terms and conditions including 180 days confinement in the county jail. Sullivan appeals.

## ISSUE

[¶ 6.] **Did the trial court err in denying Sullivan's motions for a judgment of acquittal?**

[¶ 7.] Sullivan argues that the trial court erred in denying his motions for a judgment of acquittal based upon lack of evidence that any element of forgery took place in Lake County. The standards of review for such contentions are well settled:

> The standard of review for denial of a motion for judgment of acquittal is whether the "evidence was sufficient to sustain the convictions." "When reviewing sufficiency of the evidence, this [C]ourt, considers the evidence in a light most favorable to the verdict." "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." "We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence."

*State v. Verhoef,* 2001 SD 58, ¶ 22, 627 N.W.2d 437, 442 (citations omitted)(quoting *State v. Karlen,* 1999 SD 12, ¶ 49, 589 N.W.2d 594, 605). In addition, "the question of venue is for [the trier of fact]. The state need only prove venue by a preponderance of the evidence. On appeal, this court accepts the evidence and the most favorable inferences that the [trier of fact] might have fairly drawn therefrom to support the verdict." *State v. Haase,* 446 N.W.2d 62, 65–66 (S.D.1989) (citations omitted).

[¶ 8.] SDCL 23A–16–8 provides that, "[w]hen a public offense is committed partly in one county and partly in another county, or the acts or effects thereof constituting or requisite to the offense occur in two or more counties, the venue is in either county." Courts have applied similar provisions in upholding forgery convictions in scenarios like those in this case.

[¶ 9.] In *Robinson v. Commonwealth,* 217 Ky. 129, 288 S.W. 1044 (1926), the

defendant had another man make out the body of a check to him in the amount of $145. The check was made out in Spencer County, Kentucky, but was left unsigned. The defendant later appeared at a bank in Bullit County, Kentucky and presented the check for payment. By that time, the check contained the signature of a man named A.P. Washburn as its maker and the defendant had endorsed the back of the check. The defendant was paid $145 by the bank in Bullit County and the check was later paid by the bank in Spencer County and charged to A.P. Washburn's account. There was no direct proof that the defendant signed the name of A.P. Washburn on the check in Spencer County. Yet, the defendant was convicted of forgery in that county. On appeal, the defendant argued that the proof failed to show the act constituting the forgery occurred in Spencer County. Relying on a provision similar to SDCL 23A-16-8, the Kentucky court held:

> This section of the Code is remedial in its character, and its object was to extend the lines of jurisdiction beyond the limits prescribed by the common law, and thus prevent a miscarriage of justice. The case before us comes within this section of the Criminal Code, for the purpose to commit the crime of forgery was formed in Spencer county, and the plan of carrying it into execution was there resolved upon, and partly executed there by appellant, by his causing the body of the check to be written, which was an act necessary to give the check apparent legal efficacy and one of the acts constituting the crime.

\* \* \*

As the acts done by appellant in Spencer county were some of the acts constituting the crime of forgery with which he was charged, and as they were material and essential to the crime, he was indict-

able in that county, irrespective of where the name of A.P. Washburn was written. The trial court, therefore, did not err in overruling appellant's motion for a directed verdict.

*Robinson*, 288 S.W. at 1045.

[¶ 10.] In *People v. Gerundo*, 112 Cal. App.2d 863, 247 P.2d 398 (1952), the defendant, a resident of Napa, California, made arrangements to sell advertising on a commission basis for a publication headquartered in San Francisco. The defendant subsequently turned two checks totaling eighty dollars into the publication's office in San Francisco, ostensibly for advertising for two different Napa businesses. The checks were deposited with the publication's bank in San Francisco and were subsequently forwarded to the purported makers' bank in Napa which dishonored them. The defendant was later charged and convicted of forgery in Napa County. On appeal, he argued that the evidence showed the forgery offenses were committed in San Franciso County and that no part of them was committed in Napa County. Relying on a statute identical to SDCL 23A-16-8, the California Court concluded:

> The evidence was sufficient to justify an inference that in Napa County defendant embarked upon a scheme to forge checks and to secure money for himself by cashing them or by tendering them to [the publisher] and securing commissions for advertising which had not been purchased. All of the checks were drawn on Napa banks, and were titled "Napa, Calif." It was held in *People v. Anderson*, 90 Cal.App.2d 326, 202 P.2d 1044, and *People v. Thorn*, 138 Cal.App. 714, 732, 33 P.2d 5, that the county in which preliminary arrangements for the commission of a crime are made is a proper county in which to prosecute the completed offense; and in *People v. Me-*

*gladdery*, supra[, 106 P.2d 84 (1940) ], it was held that venue may extend into any county in which the effects of the offense extend.

*Gerundo*, 247 P.2d at 402.

[¶ 11.] This Court has employed similar principles in affirming a rape conviction where the series of acts leading to completion of the offense crossed county lines. In *Haase, supra*, the defendant kidnapped the victim while she was taking an evening walk in Sioux Falls, Minnehaha County, and moved her to an abandoned farmstead in nearby Lincoln County where the rape was finally accomplished. In upholding the rape conviction in Minnehaha County, this Court observed:

> Haase forcefully pushed himself on top of the victim in an attempt to sexually assault [her], and ... attempted to remove her clothing prior to leaving Minnehaha County. Moreover, Haase's intentions were made clear when, frustrated in his attempt to remove the victim's clothing he stated, "this isn't going to work." Obviously, her mode of dress frustrated immediate penetration, which was completed in Lincoln County. These facts could well have supported a charge of attempted rape. Under these facts, it was certainly reasonable for a jury to infer that part of the force, threats and coercion exerted against the victim in Minnehaha County enabled Haase to accomplish the act of sexual penetration in Lincoln County. Therefore, under SDCL 23A–16–8 we find that venue of the rape offense could properly lie in either Minnehaha or Lincoln County.

*Haase*, 446 N.W.2d at 66 (citations omitted).

[¶ 12.] Applying the foregoing principles here yields a like result. Sullivan's series of contacts with the three Madison businessmen in a narrow span of time and his use of those individuals' names and businesses on the four sets of contracts he forged and submitted to Ionex in January 2001, justifies a reasonable inference that Sullivan first embarked upon his forgery scheme in Madison and formed at least part of his intent to commit his offenses in that community. Therefore, venue for this action could properly lie in either Lake or Minnehaha County. It follows that the trial court did not err in denying Sullivan's acquittal motions for lack of proof venue in Lake County.

[¶ 13.] Affirmed.

[¶ 14.] GILBERTSON, Chief Justice, SABERS, AMUNDSON, KONENKAMP and ZINTER, Justices, participating.