#27308-a-DG

**2016 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

JEREMIAS HERNANDEZ,                       Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOSEPH NEILES
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


BEAU J. BLOUIN
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS ON
NOVEMBER 30, 2015

OPINION FILED **01/27/16**

GILBERTSON, Chief Justice

[¶1.]	A Minnehaha County jury convicted Jeremias Hernandez on six counts of child rape—SDCL 22-22-1(1), and six counts of sexual contact with a minor— SDCL 22-22-7. Some counts within the indictment were phrased identically. Hernandez contends the evidence was insufficient to show six sexual penetrations and to establish the county where three of the child rape counts occurred. Hernandez also asserts that the identically phrased counts deprived him of due process. Specifically, he argues that the identically phrased counts subjected him to multiple punishments for a single offense, deprived him of fair notice, and preclude him from pleading the convictions in a subsequent case. Hernandez argues that if a defendant is indicted on more than one count of violating the same statutory offense (and the language used in the counts is identical), due process and double jeopardy concerns require the State to elect the specific acts that the State relies on for each of the identically phrased counts. The circuit court held it did not. We affirm.

## Facts and Procedural History

[¶2.]	On June 21, 2013, a grand jury indicted Hernandez on twelve felony counts for child rape and sexual contact of two minor sisters, D.C. and L.C.

[¶3.]	Counts 1, 2, and 3 were identical: each charged first-degree rape of D.C., a child under thirteen, occurring between October 2011 and May 2012 in Minnehaha County.

[¶4.]	Counts 4, 5, 6 were identical: each charged first-degree rape of D.C., a child under thirteen, occurring between May 2012 and May 2013 in Minnehaha County.

[¶5.] Counts 7 and 8 were identical: each charged sexual contact with D.C., a child under sixteen, occurring between October 2011 and May 2012 in Minnehaha County.

[¶6.] Counts 9 and 10 were identical: each charged sexual contact with D.C., a child under sixteen, occurring between May 2012 and May 2013 in Minnehaha County.

[¶7.] Counts 11 and 12 were identical: each charged sexual contact with L.C., a child under sixteen, occurring between October 2012 and May 2013 in Minnehaha County.

[¶8.] During the trial, D.C., a fifth grader, testified that Hernandez (who lived with them at the Garfield Apartments in Sioux Falls, South Dakota) put his hand on her "bottom part" multiple times in the master bedroom; Hernandez licked her on her bottom part on multiple occasions; and Hernandez tried to put his bottom part into her bottom part on multiple occasions in both the master bedroom and D.C.'s bedroom, resulting in Hernandez ejaculating onto D.C. D.C. also testified that Hernandez touched her breasts on multiple occasions. D.C. testified the same thing happened to L.C., D.C.'s younger sister (with the exception that Hernandez would not touch L.C.'s breasts). This happened to L.C. more than one time, D.C. testified.[1] Hernandez, D.C., L.C., and the girl's mother (V.C.), subsequently moved to a trailer home at Delta Place. D.C. testified that, after the move, Hernandez continued to place his hand on her bottom part, lick her bottom

_____

1. At trial and contrary to the evidence, L.C. said that she did not know Hernandez. L.C.'s date of birth is April 4, 2004.

part, and rub her chest on more than one occasion. Further, D.C. testified that Hernandez had her touch his bottom part by rubbing it up and down until "white stuff" would come out. D.C. also testified that she saw Hernandez touch L.C.'s bottom part, lick L.C.'s bottom part, and try to put his "thing" inside her.

[¶9.] Klely Martinez, mother of one of D.C.'s friends, testified that D.C. told Martinez about the sexual activity with Hernandez; that D.C. told Martinez that Hernandez would touch D.C. on her private parts; and that D.C. told Martinez that D.C. did not want the same to happen to L.C. anymore. Martinez testified that she took D.C. and L.C. to her pastor at Augustana Lutheran Church in Sioux Falls. The pastor, Jeanette Clark, was a mandatory reporter. Pastor Clark testified that she drove to the police station and Martinez and the girls followed. At the police station, they informed the officers of the situation. From the police station, V.C. was telephoned. V.C. testified that D.C. subsequently informed V.C. about the incidents and V.C. confirmed the living arrangements over the applicable timeframe.

[¶10.] Colleen Brazil, a forensic interviewer with Child's Voice (a children's advocacy center) interviewed D.C. on June 10, 2013. D.C., whose date of birth was October 21, 2002, was ten years old at the time of the interview. The jury viewed a video recording of the interview whereby D.C. confirmed many of the same allegations, including the fact that this all started when D.C. was nine years old.

[¶11.] Hernandez did not call any witnesses in his defense, but he did move the court for judgment of acquittal. Hernandez argued that the State failed to introduce sufficient evidence to show that he penetrated D.C., as alleged in the

indictment. The circuit court denied the motion stating, "[D.C.'s] statement that was offered to the Child's Voice forensic interviewer did include evidence which does support those charges . . . ."

[¶12.] At the conclusion of evidence, the circuit court instructed the jury. The court's instructions were typical. The instructions spelled out the elements of each count in the indictment, instructed the jury to consider each count in the indictment and the evidence applied to that count, and instructed the jury that they must conclude unanimously which evidence applied to each particular count.

[¶13.] During closing arguments, the prosecutor argued that counts one, two, and three were supported by D.C.'s testimony that Hernandez licked, touched, and placed his penis in D.C.'s vagina while they lived at the Garfield Apartments. The prosecutor pointed out that D.C. testified this conduct began when D.C. was nine. D.C.'s statements to Brazil also support a conclusion of penetration, the prosecutor urged.

[¶14.] Next, the prosecutor argued that counts four, five, and six were supported by D.C.'s testimony that Hernandez licked and digitally penetrated D.C.'s vagina on multiple occasions while living at Delta Place—a period matching the timeframe delineated in the counts. Additionally, the prosecutor reiterated the jury instruction that required all jurors to consider the same act for each charge and to consider each charge separately. Nonetheless, the prosecutor argued that the evidence supports a finding of penetration for each count.

[¶15.] For the counts charging sexual contact of D.C. while at the Garfield Apartments (counts seven and eight), the prosecutor directed the jury to D.C.'s

testimony that Hernandez licked and sucked on her breasts on multiple occasions, as well as Hernandez requiring D.C. to masturbate him. Again, the prosecutor told the jury that they must only consider Hernandez sucking on her breasts one time or the masturbation one time for each count.

[¶16.]    Likewise, for Counts 9 and 10, charging sexual contact with D.C. at Delta Place, the prosecutor directed the jury to testimony that Hernandez continued to suck on D.C.'s breasts and Hernandez required her to masturbate him with her hands until ejaculation. Finally, the prosecutor argued that Counts 11 and 12, charging Hernandez with sexual contact of L.C., are supported by D.C.'s testimony that she observed Hernandez touching L.C.'s privates, tried to stick his private parts in L.C.'s private parts, and was touching L.C.'s breasts.

[¶17.]    The State and Hernandez delivered closing arguments and the court submitted the case to the jury. The jury returned a verdict of guilty on all twelve counts. Hernandez appeals, raising three issues: (1) whether the State introduced sufficient evidence to establish that the incidents alleged at the Garfield Apartments occurred in Minnehaha County; (2) whether the State introduced sufficient evidence to support six convictions of sexual penetration; and (3) whether multiplicity in the indictment violated Hernandez's right to fair notice and protection against double jeopardy.

**Decision**

*1. Sufficiency of the evidence: Venue*

[¶18.]    Hernandez argues that the State failed to introduce sufficient evidence that the incidents in the Garfield Apartments (Counts 1, 2, 3, 7, and 8) were

committed in Minnehaha County. After reviewing the record de novo, we disagree. *See State v. Plenty Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 764 (articulating the standard of review in sufficiency challenges).

[¶19.] "Where lack of proper venue is apparent on the face of an indictment, venue objections are waived if not made prior to trial. However, when an indictment contains a proper allegation of venue so that a defendant has no notice of a defect of venue until the government rests its case, the objection is timely if made at the close of the evidence." *State v. Haase*, 446 N.W.2d 62, 65 (S.D. 1989) (quoting *United States v. Black Cloud*, 590 F.2d 270, 272 (8th Cir. 1979)). Here, the State properly alleged venue in Minnehaha County on each of the counts in the indictment and Hernandez did not object to venue at the close of the State's case in chief. Therefore, Hernandez waived venue, even if the Garfield Apartments were located in another county in South Dakota.

[¶20.] Moreover, V.C.'s trial testimony supports a jury inference that the incidents at the Garfield Apartments occurred in Minnehaha County. *See id.* at 65-66 ("On appeal, this [C]ourt accepts the evidence and the most favorable inferences that the jury might have fairly drawn therefrom to support the verdict."). On direct examination, the prosecution questioned V.C. about her current Sioux Falls address at Delta Place; V.C.'s prior address at the Garfield Apartments on 12th Street; V.C.'s daughters; V.C.'s knowledge of the incidents; the defendant; the defendant's involvement with V.C.'s daughters; V.C.'s interview at the Law Enforcement Center; and V.C.'s discussions with her daughter about the incidents. At the conclusion of V.C.'s direct testimony, the prosecutor asked, "And did all these things

we talked about, did they happen in Sioux Falls?" V.C. responded, "Yes." The prosecutor asked, "In Minnehaha County?" V.C. responded, "Yes." Based on V.C.'s testimony alone, we conclude the State established by a preponderance of the evidence that Minnehaha County was the "county . . . in which the offense is alleged to have been committed." S.D. Const. art. VI, § 7; SDCL 23A-16-3 (Rule 18); *State v. Sullivan*, 2002 S.D. 125, ¶ 7, 652 N.W.2d 786, 788 (delineating preponderance standard for venue).

### 2. Sufficiency of the evidence: sexual penetration

[¶21.] At the close of evidence, Hernandez asked the court to enter a judgment of acquittal. The court denied Hernandez's request. Hernandez argues the court erred because the State failed to introduce sufficient evidence of six sexual penetrations to support Hernandez's six convictions of child rape under SDCL 22-22-1(1). We disagree.

[¶22.] "Sexual penetration means an act, however slight, of sexual intercourse, cunnilingus [i.e., oral stimulation of vulva or clitoris], fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital or anal openings of another person's body." SDCL 22-22-2. Thus, our review turns on "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [six occurrences of any of the aforementioned acts] beyond a reasonable doubt." *See State v. Brende*, 2013 S.D. 56, ¶ 21, 835 N.W.2d 131, 140.[2]

---

2.  Our review of whether the State introduced sufficient evidence to sustain a conviction is de novo. *Brende*, 2013 S.D. 56, ¶ 21, 835 N.W.2d at 140.

*a. Sexual penetrations at the Garfield Apartments*

[¶23.]     Counts 1, 2, and 3 charged Hernandez with first-degree rape of D.C. occurring between October 2011 and May 2012 in Minnehaha County during a time D.C. lived at the Garfield Apartments.

[¶24.]     D.C. testified that Hernandez put his hand on her "bottom part" multiple times in the master bedroom; Hernandez licked D.C. on her bottom part on multiple occasions; and that Hernandez tried to put his bottom part into D.C.'s bottom part on multiple occasions in both the master bedroom and D.C.'s bedroom, resulting in Hernandez ejaculating onto D.C.

[¶25.]     The Child's Voice forensic interviewer, Brazil, testified that D.C. told her many things about incidents occurring at the Garfield Apartments. For instance, Brazil testified that D.C. said Hernandez touched D.C.'s vagina with his fingers on the inside and the outside, and that it did not feel good. D.C. told Brazil that Hernandez would try to put his penis into D.C.'s vaginal area and that Hernandez would move up and down until "white stuff would come out of his penis." According to Brazil, D.C. said it hurt and it had happened many times. Brazil testified that D.C. also disclosed that Hernandez used his mouth to touch the inside of D.C.'s vaginal area. Further, Brazil testified that D.C. talked about most things happening in Hernandez's room, but she also talked about one time where Hernandez's penis was touching her vaginal area in D.C.'s bedroom.

[¶26.]     Finally, the prosecutor urged the jury to convict Hernandez on each of the three separate counts based on the testimony that Hernandez (1) licked, (2)

touched, and (3) placed his penis in D.C.'s vagina while they lived at the Garfield Apartments.

[¶27.] We find that, based on D.C.'s and Brazil's testimony, a rational trier of fact could have found three occurrences of sexual penetration, however slight, beyond a reasonable doubt. After all, even slight oral stimulation of the vulva or clitoris is sufficient; likewise, "any intrusion, however slight, of any part of the body . . . into the genital . . . openings of [D.C.'s] body" is sufficient. SDCL 22-22-2.

### b. *Sexual penetrations at Delta Place*

[¶28.] Counts 4, 5, and 6 charged Hernandez with first-degree rape of D.C. occurring between May 2012 and May 2013 in Minnehaha County during the time D.C. lived at Delta Place.

[¶29.] D.C. testified that, after the move from the Garfield Apartments to Delta Place, Hernandez continued to place his hand on D.C.'s bottom part and he licked D.C.'s bottom part on more than one occasion.

[¶30.] Brazil also testified about the portion of her interview with D.C. that related to incidents occurring after the family moved from the Garfield Apartments to Delta Place. D.C. told Brazil that Hernandez touched D.C.'s vagina at Delta Place more than one time. Brazil also explained that children have difficulty listing an exact number of times abuse occurs. Child's Voice recorded Brazil's interview of D.C. and the prosecutor played the recording for the jury.[3]

---

3. Brazil also testified that during her interview with D.C., D.C. stated that Hernandez's mouth and fingers touched both the outside and inside of D.C.'s vagina.

-9-

[¶31.]     Dr. Nancy Free was the pediatrician who initially examined D.C.  Her testimony also buttresses the jury's conclusion that the acts at both Garfield Apartments and Delta Place constituted sexual penetration.  Dr. Free testified that D.C. talked about "things" hurting when Hernandez's penis was inside.  *See State v. Toohey*, 2012 S.D. 51, ¶ 26, 816 N.W.2d 120, 131 (finding evidence sufficient to uphold rape conviction where child victim indicated that defendant's touch was in her pudendal area and that it caused her pain).  Dr. Free also testified that based on her examination and interview, her expert opinion was that Hernandez forced multiple sexual acts upon D.C., including penal and digital penetration of D.C.'s vagina, at times forcing his penis to the point of ejaculation.  She testified that Hernandez also had oral vaginal contact with D.C.

[¶32.]     Finally, the prosecutor urged the jury to find sexual penetration based on D.C.'s testimony that Hernandez continued to lick and digitally penetrate D.C.'s vagina *on multiple occasions* while living at Delta Place.  The State's theory was that the licking occurred more than once and the touching occurred more than once; therefore, there was a minimum of four possible incidents where the jury could find the three charged occurrences of sexual penetration.

[¶33.]     We find that, when viewing the evidence most favorably to the prosecution, a reasonable jury could have found beyond a reasonable doubt that the element of sexual penetration occurred three separate times at Delta Place.

### 3.  Due Process and Double Jeopardy

[¶34.]     As mentioned, counts within the indictment contained identical language.  *See supra* ¶¶ 3-7.  Prior to trial, Hernandez asked the circuit court to

require the State to elect specific acts to attach to each count. The court denied Hernandez's request. Hernandez argues that the court's failure to require the State to elect specific acts for each count in the indictment denied him fair notice and the ability to defend against double jeopardy.

### a. Fair notice

[¶35.] Essentially, Hernandez contends the indictment was insufficient. Hernandez directs our attention to a rule articulated in *Russell v. United States*, a case in which the Supreme Court discussed the sufficiency of an indictment handed up from a grand jury pursuant to an accused's Fifth Amendment right to indictment by grand jury in a federal criminal prosecution. 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962).

[¶36.] In *Russell*, the Supreme Court considered convictions "for refusing to answer certain questions when summoned before a congressional subcommittee." *Id.* at 752, 82 S. Ct. at 1040. The Court determined that the indictments for such an offense must identify the subject under inquiry at the time of a defendant's interrogation by the subcommittee because the conduct was criminal "only if the question which the witness refused to answer pertained to a subject then under investigation by the congressional body which summoned him." *Id.* at 753-55, 82 S. Ct. at 1041. The Court discussed the "purposes and functions which a grand jury indictment is intended to serve" in the "administration of federal criminal law." *Id.* at 760, 82 S. Ct. at 1045. The Supreme Court prefaced its analysis by identifying the constitutional protections at issue: The Fifth Amendment requires the government to present the accused with an indictment by a grand jury for capital

and otherwise infamous crimes (including the case before the Supreme Court); and,

the Sixth Amendment requires the government to inform an accused of "the nature

and cause of the accusation." *Id.* at 760-61. The Supreme Court cataloged its

history of construing grand jury indictments, eventually leading to the enactment of

the Federal Rule of Criminal Procedure 7(c) in 1946.[4] The Supreme Court

---

4.    Today, Federal Rule of Criminal Procedure (7)(c)(1) is essentially the same as it was in 1946. Today the Rule states:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a particular DNA profile, as that term is defined in that section 3282.

Fed. R. Crim. P. 7 (c)(1)(footnote omitted). Likewise, South Dakota's version of Rule (7)(c)(1) is substantively the same:

> The indictment or the information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. The information must be signed by the prosecuting attorney to be valid. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement.

> Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown, but, if it is alleged that he committed it by more than one specified means, each means shall be stated in a separate count.

(continued . . .)

#27308

determined that "[r]esolution of the issue presented in the cases before [it] thus ultimately depend[ed] upon the nature of the substantial safeguards to a criminal defendant which an indictment is designed to provide." *Russell*, 369 U.S. at 763, 82 S. Ct. at 1046. It concluded that the substantial safeguards are:

> first, whether the indictment contains the elements "of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and," secondly, "in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

*Id.* at 763-64, 82 S. Ct. at 1047 (quoting *Cochran v. United States*, 157 U.S. 286, 290, 15 S. Ct. 628, 630, 39 L. Ed. 704 (1895)). Because the subject matter of the congressional committee hearings was "central to every prosecution" under the statute, the Supreme Court held that in order to provide fair notice, indictments under the statute in question required more than a recitation of the language of the statute. *Id.* at 771, 82 S. Ct. at 1051.

[¶37.]        Preliminarily, we acknowledge that the Fifth Amendment right to indictment by a grand jury is inapplicable in a state prosecution. S*ee Hurtado v. California*, 110 U.S. 516, 538, 4 S. Ct. 111, 122, 28 L. Ed. 232 (1884). However, to the extent an indictment informs the accused "of the nature and cause of the

---

(. . . continued)

> The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

SDCL 23A-6-4 (Rule 7(c)(1)).

accusation" as required under the Sixth Amendment, *Russell's* discussion regarding the sufficiency of an indictment is informative. U.S. Const. amend VI; *see Russell*, 369 U.S. at 761, 82 S. Ct. at 1045. Consequently, we have since adopted a similar rule: "To be sufficient an indictment must (1) contain the elements of the offense charged and fairly inform the defendant of the charge against him, and (2) enable him to plead an acquittal of conviction in bar of future prosecutions for the same offense." *State v. Bingen*, 326 N.W.2d 99, 100 (S.D. 1982) (citing *Russell*, 369 U.S. 749, 82 S. Ct. 1038). Importantly, under both the federal rule and its South Dakota analog, an indictment or information is generally sufficient if it follows the language of the criminal statute. *See, e.g.*, *State v. Wurst*, 436 N.W.2d 839, 843 (S.D. 1989); *United States v. Resendiz-Ponce*, 549 U.S. 102, 109, 127 S. Ct. 782, 789, 166 L. Ed. 2d 591 (2007); *cf. Russell*, 369 U.S. at 771, 82 S. Ct. at 1051 (requiring more than the language of the statute because the subject matter of the congressional inquiry was "central to every prosecution" under that particular statute).

[¶38.] Thus, using *Russell* as a guidepost, the question is whether the South Dakota statutes criminalizing child rape and sexual contact with a minor require more than a recitation of the language in the criminal statutes (similar to the statute in *Russell*); or, is a recitation of the language in the statute sufficient to provide fair notice.

[¶39.] We hold the latter: The statutes that Hernandez was charged under are unlike the federal statute at issue in *Russell*, and therefore the indictment did not require a recitation beyond the statutory elements to provide sufficient notice. In *Russell*, there could be "criminality under the statute only if the question which

-14-

the witness refused to answer pertained to a subject then under investigation by the congressional body which summoned him." *Id.* at 755, 82 S. Ct. at 1042. "A witness rightfully may refuse to answer where the questions asked are not pertinent to the matter under inquiry." *Id.* Thus, if the indictment failed to state the subject matter, in addition to the elements of the statute, the defendant was left unaware of the criminal behavior alleged. Here, the indictment left Hernandez well aware of the criminal behavior alleged: six separate acts of sexual penetration (which is defined by statute, *see* SDCL 22-22-2); and six separate acts of sexual contact with a named minor. Hence, nothing more was needed in the indictment to "apprise [Hernandez] of what he must be prepared to meet." *Id.* at 763, 82 S. Ct. at 1046.

[¶40.] We find that the indictment in Hernandez's case was sufficient to provide fair notice to Hernandez of the crimes charged. Each count identified (1) the elements of the specific offense [rape or sexual contact], (2) the correlating statute [SDCL 22-22-1 or SDCL 22-22-7], (3) the county of the offense [Minnehaha], (4) the victim of the offense [D.C. or L.C.], and (5) the period in which the alleged offense occurred. Furthermore, in addition to knowing that he must defend against, for instance, an allegation that he sexually penetrated D.C., a child under the age of thirteen in Minnehaha County between October 2011 and May 2012, Hernandez may have had access to the grand jury transcript under SDCL 23A-5-16 (Rule 6(e))[5] and he could have requested a bill of particulars.[6]

---

5.    Disclosure of matters before the grand jury is allowed "if permitted by the court at the request of a defendant upon a showing that grounds may exist for a motion to dismiss an indictment because of matters occurring before a grand jury." SDCL 23A-5-16 (Rule 6(e)).

(continued . . .)

### b. Double jeopardy

[¶41.] Nevertheless, Hernandez urges us to adopt a special rule when multiple counts charge the same statutory offense in an indictment. Hernandez contends that the State ought to be required to elect specific acts to coincide with each count in order to enable him to plead an acquittal of conviction in bar of future prosecutions for the same offense. Furthermore, Hernandez asserts that because the prosecution was not required to elect specific acts to coincide with each count in the indictment or coinciding jury instructions, the jury may have punished him twice for the same crime. Hernandez's concern focuses on counts 4, 5, and 6 (the three alleged rapes of D.C. at Delta Place).

[¶42.] The indictment was sufficient to "enable [Hernandez] to plead an acquittal of conviction in bar of future prosecutions for the same offense." *Bingen*, 326 N.W.2d at 100. We addressed this question directly in *Wurst*, 436 N.W.2d 839. In addition to pleading to the entirety of the indictment, "[Hernandez] may proceed with proof, outside the [indictment] itself, to determine the charge which the conviction was based upon in order to raise a bar to subsequent prosecution." *Id.* at 843. We believe the indictment and the record in this case adequately protect Hernandez from a subsequent prosecution for the offenses for which the jury

_____

(. . . continued)

6.     We recognize that, under the federal rule, a bill of particulars cannot save an invalid indictment. *Russell*, 369 U.S. at 770, 82 S. Ct. at 1050. However, the indictment in this case was not "invalid."

convicted him.[7] The State may not subsequently prosecute Hernandez for first-degree rape of D.C. in Minnehaha County during the period of October 2011–May 2013 based on sexual penetration with Hernandez's hands, mouth, or penis. Likewise, the State may not subsequently prosecute Hernandez for sexual contact with D.C. or L.C. in Minnehaha County occurring over the same period.

[¶43.] Hernandez was not punished twice vis-à-vis his convictions on Counts 4, 5, and 6 for a single crime. In closing, the prosecutor directed the jury's attention to D.C.'s testimony that Hernandez no longer used his penis to penetrate D.C. at Delta Place, rather only his hands and mouth. Thus, unlike the child rapes at the Garfield Apartments where the jury was directed to consider Hernandez's use of his penis for one count, his mouth for one count, and his hands for one count; at Delta Place, the jury was directed to consider the testimony that Hernandez used his mouth *more than once* and his hands *more than once*. Accordingly, the evidence supported Hernandez's conviction of one child rape by sexual penetration with the *mouth* while at Delta Place; one conviction of child rape by sexual penetration with the *hand* at Delta Place; and one conviction of child rape by sexual penetration with the *hand* or *mouth* at Delta Place since a showing was made that each type of act

---

7. Indeed, SDCL 23A-6-4 (Rule 7(c)(1)) expressly authorizes indictments where the means is unknown, much less not specifically identified: "It may be alleged in a single count that the means by which the defendant committed the offense are unknown, but, if it is alleged that he committed it by more than one specified means, each means shall be stated in a separate count." *See also* Fed. R. Crim. P. 7. (same).

occurred twice or more. The prosecutor was thereby asking the jury to find three criminal acts from four or more alleged acts.[8]

[¶44.]    Hernandez mistakenly argues this amounted to a multiplicitous indictment, thereby violating the Double Jeopardy Clause. Multiplicity "is the splintering of a single offense into separate counts in an indictment." *State v. Muhm*, 2009 S.D. 100, ¶ 19, 775 N.W.2d 508, 514. "[W]hen an indictment includes more than one count charging the same statutory violation, 'the question is whether [the Legislature] intended the facts underlying each count to make up a separate unit of prosecution.'" *United States v. Emly*, 747 F.3d 974, 977 (8th Cir. 2014) (quoting *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005)).[9] Clearly, the Legislature intended each act of sexual penetration to constitute a separate unit of prosecution; thus, Counts 4, 5, and 6 were not multiplicitous. *See State v. Cates*,

---

8.    We note that any claim of the duplicitous nature of State's prosecution was cured by jury instruction 24, instructing the jury that the jury must unanimously find that the defendant was guilty with respect to at least one of the charges in the duplicitous count:

> The defendant is accused in counts one through six of the indictment with six separate acts of Rape in the First Degree. Each count is intended to refer to a separate act of the defendant in committing that crime. Each count must be considered separately. Before the jury may find the defendant guilty on any one count of Rape in the First Degree, all jurors must be convinced beyond a reasonable doubt that the defendant is guilty of that count.

9.    Legal multiplicity occurs when a defendant is convicted under two different statutes for what the Legislature intended to be a single conviction. *See, e.g.*, *Ball v. United States*, 470 U.S. 856, 862, 105 S. Ct. 1668, 1672, 84 L. Ed. 2d 740 (1985) (deciding that without specific congressional intent, defendant could not be convicted under two statutes—receiving a firearm and possessing a firearm). Factual multiplicity, on the other hand, deals with determining a unit of prosecution under a single statute. *See Martin*, 2003 S.D. 153, ¶ 39, 674 N.W. 2d 291, 303; *Emly*, 747 F.3d at 977.

2001 S.D. 99, ¶ 9, 632 N.W.2d 28, 33 ("Each act of sexual penetration constitutes a separate offense.")  Indeed, the State has broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case.

[¶45.]       In conclusion, we affirm Hernandez's conviction on all twelve counts. First, the evidence introduced at trial was sufficient to establish that the crimes at the Garfield Apartments occurred in Minnehaha County.  Second, the evidence introduced at trial was sufficient for the jury to infer six criminal acts of sexual penetration of a child under thirteen.  Finally, the indictment provided adequate notice to Hernandez, and the record and indictment provide Hernandez with adequate information to plead his convictions if the State were to indict him again. Furthermore, the record does not support a finding that the jury punished Hernandez twice for one crime.

[¶46.]       ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.